IN RE DENIAL OF REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.

TOTAL CARE, INC., PETITIONER-PLAINTIFF v. DEPARTMENT OF HUMAN RESOURCES, STATE OF NORTH CAROLINA, RESPONDENT-DEFENDANT

No. 8926SC245

(Filed 17 July 1990)

**Hospitals § 2.1 (NCI3d)— established home health agency—opening of branch offices—no certificate of need required**

> The opening of branch offices by an established home health agency within its current service area is not the construction, development or other establishment of a new health service facility under N.C.G.S. § 131E-176(16)(a), and such home health agency is therefore not required to obtain a certificate of need pursuant to N.C.G.S. § 131E-178 before opening such branch offices.

**Am Jur 2d, Hospitals and Asylums §§ 4, 6.**

APPEAL by defendant from judgment entered 1 December 1988 by *Judge Frank W. Snepp, Jr.* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 13 October 1989.

*Moore & Van Allen, by Julia V. Jones, for plaintiff-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Richard A. Hinnant, Jr., for defendant-appellant.*

*Jordan, Price, Wall, Gray & Jones, by William R. Shenton and Steven Mansfield Shaber, for the North Carolina Association for Home Care, Inc., amicus curiae.*

IN RE REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.

[99 N.C. App. 517 (1990)]

PARKER, Judge.

The sole issue presented by defendant Department of Human Resources' appeal is whether the trial court erred in concluding that a home health agency seeking to open branch offices in counties where it already provides health services to patients is not required to obtain a Certificate of Need (CON) pursuant to G.S. 131E-178 before opening such branch offices.

Plaintiff, Total Care, is a private corporation providing home health care. Total Care's principal office is in Charlotte, North Carolina. Total Care also has offices in Salisbury, Statesville, and Gastonia, North Carolina and provides home health care services in the following counties: Alexander, Anson, Cabarrus, Catawba, Cleveland, Davidson, Davie, Gaston, Iredell, Lincoln, Mecklenburg, Rowan, Stanly, Union, and Wilkes. Plaintiff seeks to open additional offices within its current service area.

Plaintiff requested defendant, the North Carolina Department of Human Resources, to issue a declaratory ruling as to whether Total Care was required to obtain a CON before opening additional offices in its geographic service area. Defendant issued a ruling that Total Care was required to obtain a CON to open any additional offices. Plaintiff then filed a petition for judicial review and complaint for declaratory judgment pursuant to G.S. 150B-17 and G.S. 1-253. The trial court granted summary judgment for plaintiff, concluding that a CON is required, pursuant to the "new institutional health service" provision of the CON law, for a home health agency when a new health service agency or organization is to be developed, but not when an existing agency seeks merely to open new offices for the existing agency. Although the standard of review from a Department ruling is the whole record test, in the case before the Court, the facts are undisputed and the issue for resolution is one of law.

Initially, we note that from what appears of record defendant's argument concerning the interrelationship of the Health Agency Licensure Act and the CON statutes was neither pled nor argued in the court below nor was it a basis of defendant's ruling. Accordingly, we do not address this question raised for the first time on appeal.

North Carolina's CON law was adopted because of the legislature's concern:

IN RE REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.

[99 N.C. App. 517 (1990)]

[t]hat the general welfare and protection of lives, health, and property of the people of this State require that new institutional health services to be offered within this State be subject to review and evaluation as to need, cost of service, accessibility to services, quality of care, feasibility, and other criteria as determined by provisions of this Article or by the North Carolina Department of Human Resources pursuant to provisions of this Article prior to such services being offered or developed in order that only appropriate and needed institutional health services are made available in the area to be served.

G.S. 131E-175(7). To this end the legislature designated the Department of Human Resources as the State Health Planning and Development Agency for the State of North Carolina and charged the Department with implementing the CON law, determining the need for health service facilities, and developing a State Health Plan (now known as the State Medical Facilities Plan). G.S. 131E-177. Under G.S. 131E-178(a), a CON is required prior to offering or developing a "new institutional health service." In G.S. 131E-176, the definition section of the CON law, the term "new institutional health service" is defined to include "[t]he construction, development, or other establishment of a new health service facility." G.S. 131E-176(16)(a). In the same definition section a "health service facility" is defined as:

a hospital; psychiatric facility; rehabilitation facility; long term care facility; kidney disease treatment center, including free-standing hemodialysis units; intermediate care facility for the mentally retarded; *home health agency*; chemical dependency treatment facility; and ambulatory surgical facility.

G.S. 131E-176(9b) (emphasis added). A "home health agency" is defined as "a private organization or public agency, whether owned or operated by one or more persons or legal entities, which furnishes or offers to furnish home health services." G.S. 131E-176(12).

In his order reversing the Department's declaratory ruling that in order to establish branch offices a home health agency is required to obtain a CON for such offices, the trial judge concluded that under the statutory definitions of the CON law the home health agency itself, and not the service that the agency provides, is the "health service facility" governed by section 131E-176 of the CON law.

**IN RE REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.**

[99 N.C. App. 517 (1990)]

Where the language of a statute is clear and unambiguous the courts must give such language its plain and definite meaning. *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). Although where an issue of statutory construction arises the construction adopted by the agency charged with implementing the statute may be considered, such an issue only arises where an ambiguity exists. *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952). Additionally, there is a presumption that the legislature "comprehended the import of the words it employed to express its intent." *State v. Baker*, 229 N.C. 73, 77, 48 S.E.2d 61, 65 (1948), quoted in *Housing Authority v. Farabee*, 284 N.C. 242, 245, 200 S.E.2d 12, 15 (1973).

Applying these rules of statutory construction, we conclude that the legislature intended that only the home health care agency be subject to this provision of the CON law. The statute specifically defines "home health agency" as an "organization." Normally, the fact that an organization has two offices does not transform it into two organizations. Although the nature of home health services is such that the patient is treated in the temporary or permanent residence used as the patient's home, rather than at a clinic site such as a hospital or ambulatory surgery facility, if the legislature had intended to require a CON for each office used by the home health agency in providing home health services it could have specified this in the statute. The legislature did not so specify, and the term "home health agency" is unambiguous. Hence by defining a health service facility for purposes of home health care as the "home health agency" the legislature, in our view, intended to require a CON prior to the establishment of a new home health agency not merely to the opening of additional offices for administrative purposes.

Moreover, although the Department has issued a declaratory ruling that new offices of an existing home health care agency are subject to CON review, the ruling is contrary to the position taken by the Department in the 1989 State Medical Facilities Plan (herein "SMFP").

The SMFP is prepared by the Health Resources Development Section of the Division of Facility Services of the Department of Human Resources. The plan is developed under the direction of the North Carolina Health Coordinating Council and approved by

**IN RE REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.**

[99 N.C. App. 517 (1990)]

the Governor pursuant to G.S. 131E-176(24) and (25). Under G.S. 131E-177 the legislature has delegated all health services planning and development of need projections to the Department. The SMFP is the official statement of projected need for health services. The SMFP methodology for projecting need for home health agencies is basically the same today as when it was first employed in 1983. SMFP at 70. The key to the methodology is that there is no limit placed upon the number of patients served by existing home health agencies, there is merely a limit upon the number of new home health agencies allowed to be established. *Id.* A basic assumption underlying the projection of need for home health agencies is that "[a] new agency is needed if unmet need in a single county is 150 patients or more, or if such need in contiguous counties is 200 patients or more." *Id.*

In addition to this standard allocation methodology, the 1989 SMFP sets out an alternative methodology to "permit entry of another provider [of home health services]." *Id.* at 28. The alternative methodology provides:

In the *1991 State Medical Facilities Plan*, if application of the standard need determination methodology fails to do so, that Plan will establish need for an additional home health agency in those counties:

with an estimated 1988 age 65 > population of 5000 or more, and

which on July 1, 1989 had only one home health agency with an established office and telephone number located in the county, and

whose proportion of the 65 > population who were home health patients in 1988 and 1989 was 10% below the State average in each of those years.

*Id.* This proposed policy is based on the observation of apparent underservice of home health care in larger counties with only one locally-based home health agency. The Department perceives that such underservice may be a result of inadequate presentation by the existing home health agency to the public and referral agencies of information regarding the availability of the services. In such cases the SMFP alternative methodology is designed to allow the presence of another provider that may stimulate service to more persons without jeopardizing the viability of the existing agency.

**IN RE REQUEST FOR DECLARATORY RULING BY TOTAL CARE, INC.**

[99 N.C. App. 517 (1990)]

*Id.* These methodologies used to calculate the need projections upon which CON's are granted suggest that the Department is only concerned with granting CON's, and those to new agencies or providers, when the existing home health care agency is unable to meet the need for home health care services.

In the present case, plaintiff began its operations in 1978 and has been providing service continuously since that time. In plaintiff's request for the declaratory ruling, plaintiff stated that it was granted a license under the grandfather provisions of the CON law when the law was enacted, and that it had offices in four counties and operated in 15 counties. The Department admitted in its answer that plaintiff has provided services "in at least fourteen (14) counties as shown in its licensure application for 1988 on file with the Department." This 14 county area block is equivalent to a geographic service area under a CON. SMFP at 27 and N.C. Admin. Code tit. 10, r. 3R.2002 (October 1989).

Defendant and *amicus curiae*, the North Carolina Association for Home Care, Inc., are concerned that if plaintiff is allowed to open offices within its current service area without first obtaining a CON for those offices there will be nothing to prevent plaintiff from offering home health services and opening offices in leapfrog fashion across the State without obtaining a CON for such services and offices. Their concern is that an interpretation of the CON statute which defines a health service facility as the home health agency will impair the legislature's intent for central planning for health care resources distribution to control costs, assure efficient utilization, and provide for equal access to such resources.

In its request for Declaratory Ruling and in its brief to this Court, plaintiff represented its intention to open additional offices only in its existing geographical service area and without substantial change in its services. The ruling of the trial court and the ruling of this Court are premised on this undisputed fact. Hence, although we hold that the opening of branch offices by an established home health agency within its current service area is not the construction, development, or other establishment of a new health service facility under G.S. 131E-176(16)(a), this opinion is limited to the facts of this particular appeal and does not determine the question whether extension of home health services to patients in counties outside an agency's current service area, or the expansion of branch offices of an established home health agency outside

the agency's current service area, would trigger the CON require-ment under G.S. 131E-176.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

Judges EAGLES and GREENE concur.