HOSPICE AT GREENSBORO, INC. D/B/A HOSPICE AND PALLIATIVE CARE OF
GREENSBORO AND HOSPICE OF THE PIEDMONT, INC., PETITIONER v. NORTH
CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES DIVISION OF
FACILITY SERVICES, LICENSURE AND CERTIFICATION SECTION AND NORTH
CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF
FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENTS, AND
LIBERTY HOME CARE, LLC, RESPONDENT-INTERVENOR

No. COA06-1204

(Filed 7 August 2007)

**1. Hospitals and Other Medical Facilities— hospice—no
review letter—exemption—appeal to Court of Appeals**

The issuance of a "no review" letter by the N.C. Depart-
ment of Health and Human Services Certificate of Need section
is the issuance of an "exemption" for purposes of N.C.G.S.
§ 131E-188(a), so that there may be an immediate appeal to the
Court of Appeals rather than to superior court.

**2. Hospitals and Other Medical Facilities— certificate of
need—hospice—branch office**

The opening of a branch office by an established hospice
within its current service area is not the construction of a new
institutional health service for which a certificate of need (CON)
is required (as Chapter 131E existed in July 2005). However,
Liberty was required to obtain a CON for its proposed
Greensboro hospice office because that office is not located
within the current service area of its Fayetteville office and is a
new institutional health service.

1

**HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[185 N.C. App. 1 (2007)]

3. **Hospitals and Other Medical Facilities— hospice—no review letter for expansion—prejudice to existing competing provider**

The issuance of a "no review" letter, which results in the establishment of a new institutional health service (in this case a hospice) without a prior determination of need, substantially prejudiced a licensed, pre-existing competing health service provider as a matter of law.

Appeal by respondent-intervenor from final agency decision entered on or about 12 June 2006 by North Carolina Department of Health and Human Services, Division of Facility Services Director Robert J. Fitzgerald. Heard in the Court of Appeals 11 April 2007.

*Wyrick Robbins Yates & Ponton, LLP by K. Edward Greene for Respondent-Intervenor Liberty Home Care, LLC.*

*Smith Moore, LLP by Maureen Demarest Murray and Susan M. Fradenburg for Petitioner Hospice at Greensboro, Inc. d/b/a Hospice and Palliative Care of Greensboro's and Hospice of the Piedmont, Inc.*

*Attorney General Roy A. Cooper, III by Assistant Attorney General June S. Ferrell for Respondent-Appellee N.C. Dept. of Health and Human Services.*

*Bode Call & Stroupe, L.L.P. by Matthew A. Fisher for Amicus Community CarePartners, Inc.*

*Maupin Taylor, P.A. by Marcus C. Hewitt for Amicus Community Home Care of Johnston County, Inc., Carrolton Home Care, Inc., and Community Home Care of Vance County, Inc.*

*Parker Poe Adams & Bernstein by Renee J. Montgomery, Susan L. Dunathan, and Robert A. Leandro for Amicus Hospice & Palliative Care Charlotte Region d/b/a Hospice at Charlotte.*

*Johnston, Allison & Hord, P.A. by Patrick E. Kelly for Amicus The Carolinas Center for Hospice and End of Life Care.*

STROUD, Judge.

Respondent-intervenor Liberty Home Care, L.L.C. appeals from the final agency decision entered by the North Carolina Department

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

of Health and Human Services [DHHS], Division of Facility Services [DFS] in a contested case. Petitioner Hospice at Greensboro, Inc. [HGI] contested the DHHS, DFS Certificate of Need Section's [CON Section] issuance of a "No Review" letter to Liberty, which authorized Liberty to open a hospice office in Greensboro, North Carolina without first obtaining a Certificate of Need [CON] from the department. The final DHHS agency decision granted summary judgment in favor of HGI based upon the agency's conclusions that Liberty's Greensboro hospice office was a "new institutional health service" for which Liberty was required to obtain a CON and that HGI was "substantially prejudiced" by the CON Section's actions.

This Court must resolve three issues on appeal: (1) whether N.C. Gen. Stat. § 131E-188 (2005) authorizes Liberty to appeal the final DHHS agency decision directly to this Court, (2) whether Liberty established a "new institutional health service" in Guilford County for which it was required to obtain a CON, and (3) whether HGI has shown "substantial prejudice" resulting from the CON Section's actions. We affirm.

## I. Factual Background

On 21 February 2005, Liberty's Executive Director Anthony Zizzamia, Jr. sent a letter of intent to CON Section Chief Lee Hoffman, requesting permission to open "branch locations" to its "existing licensed and certified hospices" without first obtaining CONs. In the letter, Zizzamia expressed Liberty's "understanding that the branch extension of existing hospice offices is exempt from [CON] review"; thus, Zizzamia sought a "No Review" letter from the CON section. Liberty proposed "branch office locations" in four additional counties based on its "existing licensed and certified" Fayetteville hospice and in nine additional counties based on its "existing licensed and certified" Raeford hospice.

On 7 March 2005, the CON Section responded to Liberty's letter of intent and informed Liberty that "[e]stablishment of each branch office is a separate determination that requires a separate request." The CON section further explained that Liberty "must demonstrate the need for each branch office based on the provision of hospice services to patients who reside in that county from the home office that will support the branch office."

On 30 March 2005, Hoffman sent a letter to Zizzamia requesting additional information and responding to his inquiries "as to whether a certificate of need is required prior to opening the branch offices"

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

that Liberty proposed. Hoffman stated that Liberty must document that the proposed offices would be "located in" Liberty's " 'current service area,' " explaining "documentation must be submitted to show that the proposed branch offices will be located in a county in which at least one patient is currently served by one of your existing licensed hospice agencies." (Emphasis added.) According to Hoffman, Liberty's "current service area" included any county in which Liberty served at least one patient from its existing, licensed hospices. [hereinafter one patient rule]. An attachment to Hoffman's letter set forth a sample format for providing the requested information. The attachment was titled "RE: Exempt from review/<Proposed County Location> branch office of <name of existing licensed hospice> Medicare Provider."

Thereafter, Liberty made a separate request for each proposed hospice office and submitted documentation to show the proposed hospice offices complied with the one patient rule. In particular, on 30 June 2005, Liberty informed the CON section that it had "recently admitted a hospice patient in Guilford County, North Carolina," who was "being served by [Liberty's] Hospice providing services from our Fayetteville location." Liberty requested that the CON section "provide [it] with a letter of '[N]o [R]eview' with respect to this [Greensboro] branch office."

As documentation, Liberty attached a Home Health Certification and Plan of Care[1] identifying one patient, S.H., in Greensboro, North Carolina. The form listed S.H.'s "start of care date" as 21 June 2005. It also listed authorized prescription medications for S.H. and set forth a plan for S.H.'s care, which included the use of oxygen, wound care, pain management, and "short term therapy management of terminal illness." Liberty received the Plan of Care on 27 June 2005 and the form was signed by S.H.'s attending physician on 28 June 2005; however, S.H. died on 24 June 2005. Notwithstanding S.H.'s death, Liberty attached the Plan of Care to its 30 June 2005 request for a "No Review" letter as documentation of its "current service area." The Plan of Care for S.H. is the only documentation of current service area that Liberty provided to the CON section.

On 7 July 2005, the CON Section responded to Liberty's 30 June 2005 request for "No Review." The response provided, in part:

1. Although the letter from Liberty stated that a "signed Hospice Plan of Care identifying the location of this patient is attached," the form actually attached was a Home Health Certification and Plan of Care, which is DHHS Health Care Financing Administration Form 4-485, not a hospice care plan.

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

Based on the CON law in effect on the date of this letter, the proposal described in your correspondence is not governed by, and therefore, does not currently require a certificate of need. . . . Further, it should be noted that this determination is binding only for the facts represented by you. Consequently, if changes are made in the project or in the facts provided in the correspondence referenced above, a new determination as to whether a certificate of need is required would need to be made by the Certificate of Need Section.

[Hereinafter "No Review" letter.]

The CON Section relied entirely upon Liberty's 30 June 2005 representations and made no further inquiry before issuing this "No Review" letter to Liberty.

On 15 July 2005, based upon the "No Review" letter, Liberty applied for a license from DHHS DFS License and Certification Section to operate a "branch office" in Guilford County, which the Section granted. The license, which became effective 19 July 2005 and expired "[m]idnight, December 31, 2005," authorized Liberty to "operate a hospice known as Liberty Home Care and Hospice located at 2307 West Cone Blvd., Suite 150, City of Greensboro, North Carolina Guilford County."

On 5 August 2005, HGI filed a petition for a contested case hearing, requesting review of the CON Section's decision to approve Liberty's request for a "No Review" letter and the decision of the License and Certification Section, to issue a license to Liberty for the Greensboro hospice office. Liberty intervened in the contested case on 18 August 2005.

On 2 December 2005, HGI filed motions for summary judgment, entry of a stay of the CON Section's 7 July 2005 "No Review" letter to Liberty, and entry of a stay of the hospice license issued to Liberty on 19 July 2005 for the Greensboro hospice office. HGI argued that Liberty's Greensboro hospice office is a "new institutional health service" for which Liberty was required to obtain a CON. On 9 December 2005, Liberty filed a motion for summary judgment arguing that HGI was not an "aggrieved party" because the issuance of a "No Review" letter to Liberty did not "substantially prejudice[]" HGI's rights.

Depositions and affidavits submitted for the purpose of summary judgment established that Liberty first hired employees for its

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

Greensboro hospice office in April or May of 2005. Thereafter, Liberty provided hospice services to one patient named S.H. for four days, from 21 to 24 June 2005. Before coming into Liberty's care, S.H. was a resident in Oakhurst nursing facility. A representative of Oakhurst contacted Liberty to inform Liberty that Oakhurst had a patient who needed hospice services. At that time, Liberty was "actively looking for hospice patients to serve" so that it could "establish [its] hospice unit" in Greensboro. As of 26 September 2005, Liberty had not provided hospice services to any patient in Greensboro other than S.H. Liberty did not obtain a CON for its Greensboro hospice office, but received a license for this office based upon the CON Section's issuance of a "No Review" letter.

The "No Review" process is not set forth in statute or rule, but is a practice DHHS developed over time based on its understanding of this Court's decision in *In re Total Care*. In *In re Total Care*, this Court held that "the opening of branch offices by an established home health agency within its current service area is not the construction, development, or other establishment of a new health service facility" for which a CON was required. *In re Total Care*, 99 N.C. App. 517, 522, 393 S.E.2d 338, 342 (1990). When determining whether a proposed branch office is within a health service provider's current service area the CON section considered only whether the applicant hospice had recently "provided hospice services in the county in which they want to open a branch." Here, the CON Section relied entirely upon Liberty's representations to make this determination.

Administrative Law Judge Agustus B. Elkins, II entered a recommended decision granting HGI's motion for summary judgment on 25 January 2006. DFS Director Robert J. Fitzgerald reviewed the recommended decision, considered written exceptions, and heard oral argument on 21 April 2006. Fitzgerald entered a final agency decision on 12 June 2006, adopting most of Judge Elkin's findings and granting HGI's motion for summary judgment. Liberty appealed the final agency decision to this Court.

## II. Jurisdiction

[1] HGI asks this Court to dismiss Liberty's appeal, arguing that appeal from a final DHHS agency decision concerning a "No Review" letter must be filed in Superior Court, Wake County pursuant to section 150B-45 of the North Carolina Administrative Procedure Act. N.C. Gen. Stat. § 150B-45 (2005). Liberty agrees with HGI that section 150B-45 controls but asks this Court to grant certiorari review pur-

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

suant to Rule 21 of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 21 (2005). In their briefs, both parties acknowledge that N.C. Gen. Stat. § 131E-188(a) (2005) permits "any affected person" to contest the CON Section's decision to "issue, deny, or withdraw a certificate of need or exemption" and that N.C. Gen. Stat. § 131E-188(b) (2005) provides a direct appeal to this Court from "all or any portion" of any final DHHS agency decision resolving a contested case filed under this section. However, the parties conclude that section 131E-188 does not authorize immediate appeal to this Court from the final DHHS agency decision resolving petitioner's challenge to the CON section's issuance of a "No Review" letter because a "No Review" letter is not an "exemption."

We disagree with both parties and hold that the CON section's issuance of a "No Review" letter is the issuance of an "exemption" for purposes of section 131E-188(a). Accordingly, we conclude that section 131E-188(b) confers jurisdiction on this Court to hear Liberty's appeal.[2]

"Any person affected,"[3] by the CON Section's "decision to issue . . . a certificate of need or exemption" is "entitled to a contested case hearing under Article 3 of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 131E-188 (2005). Chapter 150B of the North Carolina General Statutes is commonly known as the Administrative Procedure Act and Article 3 of that Chapter sets forth the procedures governing administrative hearings in contested cases. A "contested case" is "an administrative proceeding . . . to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges." N.C. Gen. Stat. § 150B-2(2) (2005). Generally, "to obtain judicial review of a final decision" entered pursuant to Article 3 of Chapter 150B, "the person seeking review must file a petition in the Superior Court of Wake County or in the superior court of the county where the person

---

2. Additionally, we note that Rule 21 of the North Carolina Rules of Appellate Procedure authorizes this Court to grant certiorari review only "when the right to prosecute an appeal has been lost by failure to take timely action, or when no right to appeal from an interlocutory order exists, or for review pursuant to N.C. Gen. Stat. § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief." N.C. R. App. P. 21(a)(1) (2005). None of these circumstances are present in the case *sub judice.*

3. N.C. Gen. Stat. § 131E-188(c) (2005) defines an "affected person" as "the applicant . . . [and] any person who provides services, similar to the services under review, to individuals residing within the service area or the geographic area proposed to be served by the applicant."

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

resides." N.C. Gen. Stat. § 150B-45 (2005). However, when the final agency decision resolves a contested case filed pursuant to section 131E-188, appeal may be taken to this Court as of right. N.C. Gen. Stat. § 131E-188(b); N.C. Gen. Stat. § 7A-29(a) (2005).

HGI contests the CON Section's issuance of a "No Review" letter to Liberty. If the "No Review" letter represents an "exemption," then section 131E-188(b) confers jurisdiction on this Court to consider Liberty's appeal from the final DHHS decision resolving the contested case. If not, then appellate jurisdiction lies in Superior Court, Wake County or in the superior court of the county where Liberty resides.

The term "exemption" is not defined by N.C. Gen. Stat. § 131E-176 (2005), which provides definitions for many terms of art used throughout Chapter 131E. Although N.C. Gen. Stat. § 131E-184 (2005) lists circumstances in which DHHS "shall exempt . . . a new institutional health service" from certificate of need review, that section does not define the term "exemption." Finding no express definition of the term "exemption" in Chapter 131E, we "presume[] the General Assembly intended the word[] it used to have the meaning [it has] in ordinary speech." *Nelson v. Battle Forest Friends Meeting*, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993); *see also Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (stating that "[s]tatutory interpretation properly begins with an examination of the plain words of the statute.").

To be "*exempt*" *ordinarily means to* be "free from an obligation or liability to which others are subject" or to be "released from or not subject to, an obligation, liability, etc." Random House Webster's College Dictionary, 467 (1st ed. 1991); Black's Law Dictionary 612 (8th ed. 2004) (defining "exempt" as "free or released from a duty or liability to which others are held"); Ballentine's Law Dictionary, 435 (3rd ed. 1969) (defining "exempt" as "free of an obligation which is binding on others").

With respect to health service providers, N.C. Gen. Stat. § 131E-178(a) (2005) states, "No person shall offer or develop a new institutional health service without first obtaining a certificate of need" from DHHS. The plain language of section 131E-178(a) places an affirmative duty on any person seeking to "offer or develop a new institutional health service" to apply for and receive a CON first. Here; the CON Section released Liberty from the obligation to obtain a CON for its Greensboro hospice office by issuing the "No

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

Review" letter. Thus, the CON section's issuance of a "No Review" letter is an "exemption" which HGI was entitled to contest pursuant to section 131E-188(a).[4] *See also In re Wilkesboro, Ltd.*, 55 N.C. App. 313, 317, 285 S.E.2d 626, 628 (1982) (similarly concluding under prior law that the CON Section's issuance of a "letter relieving Wilkesboro, Limited of the requirement to apply for a certificate of need" was "[an] approval, an approval with conditions, or [a] denial of an application for a certificate of need" which the petitioner was entitled to contest).

For the reasons stated above, we hold that the CON Section's issuance of a "No Review" letter is the issuance of an "exemption" for purposes of section 131E-188(a). Accordingly, we conclude that section 131E-188(b) confers jurisdiction on this Court to hear the incident direct appeal.

### III. Summary Judgment

[2] Liberty argues that DHHS erred by granting petitioner's motion for summary judgment. In particular, Liberty assigns error to the agency's conclusions that (1) "Liberty's proposal to open a new hospice office in Guilford County constitutes the establishment of a new hospice agency which required a Certificate of Need" and (2) "[HGI is] substantially prejudiced as a matter of law by [the CON Section's] actions." Citing *In re Total Care*, 99 N.C. App. 517, 393 S.E.2d 338 (1990), Liberty concludes that it was not required to obtain a CON before opening the Greensboro office because the office (1) is located within the "service area" of its existing Fayetteville hospice and (2) is a "branch office" of the Fayetteville hospice. Citing N.C. Gen. Stat. § 150B-23 (2005) and *Bio-Medical Applications of N.C., Inc. v. N.C. Dep't of Health and Human Servs.*, No. COA04-1644, slip op. (N.C. App. Oct. 4, 2005) (unpublished), Liberty concludes HGI failed to show that the CON Section's issuance of the "No Review" letter substantially prejudiced its rights because HGI's claims of prejudice are speculative and because HGI does not

---

4. This interpretation of section 131E-188 is consistent with the CON section's own understanding of "No Review" letters. The CON section itself described the "No Review" process as an "exemption" in the attachment to its 30 March 2005 letter to Liberty. In that letter, the CON section explained what information it needed to consider Liberty's request for "No Review." The attachment contained the following template for the title of Liberty's "No Review" request: "RE: Exempt from review/<Proposed County Location>branch office of <name of existing licensed hospice>Medicare Provider." (Emphasis added.) The final DHHS agency decision also states that appeal lies to this Court pursuant to section 131E-188.

have a right to be free from competition. These are questions of law which this Court reviews *de novo. Craven Reg'l Medical Authority v. N.C. Dep't of Health and Human Servs.*, 176 N.C. App. 46, 51, 625 S.E.2d 837, 840 (2006). We disagree with Liberty and affirm the final DHHS agency decision.

A. New Institutional Health Service

N.C. Gen. Stat. § 131E-178 provides that "No person shall offer or develop a <u>new institutional health service</u> without first obtaining a certificate of need" from DHHS. (Emphasis added.) " 'New institutional health service' means," in part, "[t]he construction, development, or other establishment of a hospice." N.C. Gen. Stat. § 131E-176(16)(n) (2005). Therefore, any person seeking to construct, develop, or otherwise establish a hospice must first obtain a CON from DHHS.

In 1990, this Court considered whether an existing home health agency must obtain a CON before opening a branch office within its service area. *See In re Total Care*, 99 N.C. App. 517, 393 S.E.2d 338. At that time, section 131E-176 defined "new institutional health service" to mean, in part, "[t]he construction, development, or other establishment of a new health service facility." N.C. Gen. Stat. § 131E-176(16) (1989). New "health service facility" was defined, in part, as a "home health agency." *Id.* Considering these statutory definitions, together with the statutory definition of home health agency,[5] this Court held that "the opening of branch offices by an established home health agency within its current service area is not the construction, development, or other establishment of a new health service facility" for which a CON was required. *In re Total Care*, 99 N.C. App. at 522, 393 S.E.2d at 342. In so doing, the Court reasoned that a home health agency's opening of a second office inside its current service area did not "transform" it into two separate agencies. *Id.* at 520, 393 S.E.2d at 340. The Court noted that "if the legislature had intended to require a CON for each office used by the home health agency in providing home health services it could have specified this in the statute," and specifically in the statutory definition of "new health service facility."[6]

5. At that time, section 131E-176(12) defined a "home health agency" as "a private organization or public agency, whether owned or operated by one or more persons or legal entities, which furnishes or offers to furnish home health services." N.C. Gen. Stat. § 131E-176(12) (1989).

6. Thereafter, the North Carolina General Assembly amended the statutory definition of "new institutional health service" to include "[t]he opening of an additional

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

We conclude that the reasoning and rule of *In re Total Care* govern the case *sub judice*. An existing hospice's opening of a second office within its current service area does not transform it into two separate hospices. Correspondingly, if the legislature had intended to require a CON for each office used by a hospice then it could have specified this in the statutory definition of "new institutional health service."[7] Therefore, the opening of branch offices by an established hospice within its current service area is not the construction, development, or other establishment of a new institutional health service for which a CON is required.[8] Our conclusion applies only to the statutory definition of "new institutional health service" in effect in July 2005, at the time the CON Section issued the "No Review" letter for Liberty's proposed Greensboro hospice office.

Having concluded that the rule of *In re Total Care* is applicable to hospice branch offices opened within an existing hospice's service area, this Court must consider whether Greensboro is within the "service area" of Liberty's Fayetteville hospice. In so doing, we emphasize that this Court's decision in *In re Total Care* was "premised on [the] undisputed fact" that the plaintiff "inten[ded] to open additional offices only in its existing geographical service area." *In re Total Care*, 99 N.C. App. at 522, 393 S.E.2d at 342. Thus, whether the home health care office proposed by the plaintiff home health care agency in *In re Total Care* was actually located within the plaintiff's "service area" was not an issue on appeal and was not addressed in the Court's opinion.

---

office by an existing home health agency within its service area as defined by rules adopted by the Department; or the opening of any office by an existing home health agency outside its service area as defined by rules adopted by the Department." 1991 N.C. Sess. Laws 2222.

7. Recently, the General Assembly further amended the statutory definition of "new institutional health service" to include "the opening of an additional office by an existing . . . hospice within its service area . . . or outside its service area." 2005 N.C. Sess. Laws 1179. Although this session law was ratified by the General Assembly on 16 August 2005 and signed by the Governor on 26 August 2005, it did not "become[] effective for hospices and hospice offices" until 31 December 2005. 2005 N.C. Sess. Laws 1184. Liberty requested a "No Review" letter for its proposed Greensboro office in March 2005, shortly before the original Bill was filed in the Senate. S. 740, 2005 Gen. Assem., Reg. Sess. (N.C. 2005).

8. Our holding is consistent with a 15 February 2004 declaratory ruling entered by DFS Director John M Syria, who determined that an existing, licensed hospice did not need to obtain a CON to open a "branch office" within its "existing service area."

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

1. Service Area

A "service area" is "the area of the State, as defined in the State Medical Facilities Plan or in the rules adopted by [DHHS] which receives services from a health services facility." N.C. Gen. Stat. § 131E-176(24a) (2005). The 2005 State Medical Facilities Plan [SMFP] defines a "hospice's service area" as "the hospice planning area in which the hospice is located." N.C. Dep't of Health and Human Servs., 2005 State Medical Facilities Plan 252 (2005). "Each of the 100 counties in the State is a separate hospice planning area." *Id.* Thus, the North Carolina General Statutes define a hospice's "service area" as the county in which it is located.

As explained above, this Court did not consider whether the home health care office proposed by the plaintiff home health care agency in *In re Total Care* was actually located within the plaintiff's service area. In fact, the plaintiff in *In re Total Care* established its home health agency in 1978, which is before the effective date of the CON act. Because the plaintiff "was granted a license under the grandfather provisions of the CON law when the law was enacted," it operated without a CON in approximately fourteen counties, including four in which it had offices. For purposes of that appeal, the Court treated the fourteen counties in which the plaintiff operated as "equivalent to a geographic service area under a CON," citing the SMFP in effect at that time.[9] Thus, when stating its holding, this Court used the term "service area" as the term was defined in the SMFP. The Court did not create a new definition for this term or consider whether the plaintiff's "service area" actually complied with the SMFP definition. The definition of "service area" was not at issue in that case.

Applying *In Re Total Care* to the case *sub judice,* we hold that the opening of branch offices by an established hospice within its current service area is not the construction, development, or other establishment of a new institutional health service for which a CON is required. Service area means "the hospice planning area in which the hospice is located." Liberty holds a CON for its hospice located in Fayetteville, North Carolina. The planning area and, therefore, the service area for this hospice is Cumberland County. Because Liberty seeks to open a hospice office in Greensboro, North Carolina, which

---

9. At that time, the SMFP stated that "[a] proposed service area (for home health services) may also consist of a grouping of contiguous counties." N.C. Dep't of Health and Human Servs., 1989 State Medical Facilities Plan 27 (1989).

is located in a county outside the service area of its existing hospice, Liberty has not met the requirements set forth in *In re Total Care.*

Liberty urges this Court to ignore the statutory definition of "service area," arguing that the home health care office proposed by the plaintiff home health care agency in *In re Total Care* did not meet the statutory definition of "service area"; the CON Section has interpreted *In re Total Care* to create a new definition of service area, such that a health service provider's service area is any area in which it has recently served at least one patient; and the statutory definition of "service area" is used only to determine whether there is a need for a "new institutional health service." We are not persuaded.

First, this Court's opinion in *In re Total Care* was "premised on [the] undisputed fact" that the plaintiff "inten[ded] to open additional offices only in its existing geographical service area." *In re Total Care*, 99 N.C. App. at 522, 393 S.E.2d at 342. Again, whether the proposed home health care offices were actually located within the plaintiff home health care agency's existing service area was "undisputed" and not at issue on appeal.

Second, we agree with Liberty that an agency's interpretation of a statutory term is entitled to deference when the term is ambiguous and the agency's interpretation is based on a "permissible construction of the statute." *County of Durham v. N.C. Dep't of Env't and Natural Res.*, 131 N.C. App. 395, 396-97, 507 S.E.2d 310, 311 (1998). However, we conclude that the statutory term "service area" is not ambiguous and that the CON Section's interpretation of this term is not based on "construction of the statute"; rather, it is based on an erroneous reading of this Court's decision in *In re Total Care.*

CON Section Chief Lee Hoffman testified at a deposition taken in preparation for the hearing in this contested case. When asked how the CON Section defined the term "current service area," Hoffman explained that the Section considered a "current service area" to be any county where "there was a patient being served at about that time" or "there had been a pattern and practice of services provided to that county, even if there wasn't a patient currently being served in the most recent past." Hoffman also repeatedly testified that the CON Section gleaned this definition from this Court's decision in *In re Total Care* and nowhere else.

DHHS is not entitled to judicial deference to its misinterpretation of *In re Total Care.* In fact, by implementing a one patient rule, DHHS

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

has encouraged a practice that this Court disavowed in that case: "[the] offering . . . and opening [of] offices in leapfrog fashion across the State without obtaining a CON for such services and offices." *In re Total Care*, 99 N.C. App. at 522, 393 S.E.2d at 342. This Court expressly "premised" its ruling "on [the] undisputed fact" that the plaintiff home health agency intended "to open additional offices only in its existing geographical service area" and explained that its decision in *In re Total Care* was "limited to the facts of [that] particular appeal" to prevent such an interpretation. *Id.*

Moreover, DHHS is not entitled to deference for a policy that is contrary to the plain language of section 131E-176(24a), which defines a hospice's service area as the county in which the hospice is located by statutorily adopting the definition of service area set forth in the SMFP. The one patient rule further frustrates the General Assembly's express purpose to prevent "[t]he proliferation of unnecessary health service facilities" by permitting hospice providers to open facilities in "leapfrog fashion" without a determination that such facilities are needed. N.C. Gen. Stat. § 131E-175(4) (2005). The General Assembly has determined that "unnecessary health service facilities result[] in costly duplication and underuse of facilities," as well as "unnecessary use of expensive resources" and "an enormous economic burden on the public who pay for the construction and operation of these facilities as patients, health insurance subscribers, health plan contributors, and taxpayers," which the CON process is designed to prevent. N.C. Gen. Stat. § 131E-175(4), (6) (2005).

Third, Liberty argues that the statutory definition of "service area" is used only to determine the need for a "new institutional health service," and should not be used to determine whether its proposed Greensboro hospice office meets the definition of "new institutional health service." In essence, Liberty asks this Court to determine that its proposed Greensboro office is not subject to the requirements of the CON law because the proposed office is inside Liberty's service area and that the proposed office is inside Liberty's service area because the CON law (specifically the statutory definition of service area) does not apply. We reject this circular argument.

2. Extension of *In re Total Care*

This Court limited its holding in *In re Total Care* as follows:

[T]his opinion is limited to the facts of this particular appeal and <u>does not determine the question whether</u> extension of

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

home health services to patients in counties outside an agency's current service area, or the expansion of branch offices of an established home health agency outside the agency's current service area would trigger the CON requirement under N.C. Gen. Stat. § 131E-176.

*In re Total Care*, 99 N.C. App. at 522-23, 393 S.E.2d at 342 (emphasis added). Having concluded that Liberty's Greensboro hospice office is located outside the service area of its Fayetteville hospice, we must answer the question left unresolved by *In re Total Care*: whether an existing hospice care provider must obtain a CON before opening an office outside its service area. We conclude that it must.

Because a branch hospice office is necessarily supported by an existing certified "parent" hospice, it is also necessarily subject to the limitations imposed on the "parent" hospice by the CON law. *See In re Total Care*, 99 N.C. App. at 520, 393 S.E.2d at 340. (reasoning that a branch home health office and parent home health agency comprise a single agency). Every CON is issued for a finite "service area." *See* N.C. Gen. Stat. § 131E-181(a) (entitled "Nature of a Certificate of Need") (stating "[a] certificate of need shall be valid only for the defined scope, physical location, and person named in the application). It is well established that an existing institutional health service must obtain a new CON to relocate outside this service area. N.C. Gen. Stat. § 131E-176(16)(q). This is because "the relocation of a health service facility from one service area to another" establishes a "new institutional health service." *Id.*; *But see Christenbury Surgery Center v. N.C. Dep't of Health*, 138 N.C. App. 309, 531 S.E.2d 219 (2000). Similarly, we hold that an existing institutional health service must obtain a new CON to open a "branch office" outside its service area.[10] Such an office, regardless of the label affixed by its developer, is a "new institutional health service" for which a CON is required.

3. Conclusion

For the reasons stated above, we hold that the opening of a branch office by an established hospice within its current service area is not the construction, development, or other establishment of a new institutional health service for which a CON is required. This

10. We note that Total Care did not define "branch office" as it was undisputed in that case that the new home health office was a "branch office. The CON law contains no formal definition of a "branch office." For purposes of this opinion reviewing summary judgment, we assume that Liberty's Greensboro office is a "branch office." However, this opinion also does not define "branch office" as such a holding is not necessary.

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

holding is applicable only to Chapter 131E as it existed in July 2005. We further hold that the Greensboro hospice office proposed by Liberty is not located within its current service area; therefore, the proposed office is a "new institutional health service" for which Liberty was required to obtain a CON. Accordingly, this assignment of error is overruled.

B. Substantial Prejudice

[3] Liberty assigns error to DHHS's denial of its motion for summary judgment. In support of its argument, Liberty contends that HGI failed to allege in its petition for a contested case hearing that the CON Section "substantially prejudiced" its rights and failed to forecast evidence of "substantial prejudice" as required by N.C. Gen. Stat. § 150B-23(a) (2005). We disagree and hold that the issuance of a "No Review" letter, which results in the establishment of "a new institutional health service" without a prior determination of need, substantially prejudices a licensed, pre-existing competing health service provider as a matter of law.

N.C. Gen. Stat. § 150B-23(a) provides, in part, that a petition for a contested case hearing "shall state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights." Here, HGI alleges only that the CON Section's issuance of a "No Review" letter to Liberty has "substantially prejudiced" its rights. In support of this allegation, HGI forecast evidence regarding the potential for loss of patients, patient confusion, and impairment of fund-raising for non-profit hospices. Because we resolve this issue as a matter of law, we do not consider the sufficiency of the evidence forecast by HGI.

HGI is a hospice care provider that has been operating licensed hospices in Guilford County since 1978 and has a significant interest in ensuring that unnecessary and duplicative hospice services are not opened in its service area. Because an applicant for a CON must "demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities," this interest (which the General Assembly has also determined to be a public interest) is vetted during the CON application process. Competing hospice providers, like HGI, may participate in the CON application process by filing "written comments and exhibits concerning a proposal [for a new institutional health service]

HOSPICE AT GREENSBORO, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 1 (2007)]

under review with the Department." N.C. Gen. Stat. § 131E-185(a1) (2005). Such comments may include

a. Facts relating to the service area proposed in the application;

b. Facts relating to the representations made by the applicant in its application, and its ability to perform or fulfill the representations made;

c. Discussion and argument regarding whether, in light of the material contained in the application and other relevant factual material, the application complies with relevant review criteria, plans, and standards.

*Id.*

Here, HGI was denied any opportunity to comment on the CON application, because there was no CON process. In fact, the CON Section's issuance of a "No Review" letter to Liberty effectively prevented any existing health service provider or other prospective applicant from challenging Liberty's proposal at the agency level, except by filing a petition for a contested case. We hold that the issuance of a "No Review" letter, which resulted in the establishment of a "new institutional health service" in HGI's service area without a prior determination of need was prejudicial as a matter of law. *Cf. In re Wilkesboro, Ltd.*, 55 N.C. App. 313, 285 S.E.2d 626 (decided under prior law, holding that the petitioner was entitled to a contested case hearing, and concluding that the petitioner, who was a competitor of the respondent, had "a substantial stake in the outcome of the controversy, such that the Court could, "in fact, think of no better person to assure complete review of this issue").

## IV. Conclusion

For the reasons stated above, we hold that the CON Section's issuance of a "No Review" letter is the issuance of an "exemption" for purposes of section 131E-188(a). Accordingly, we conclude that section 131E-188(b) confers jurisdiction on this Court to hear the incident appeal.

Additionally, we hold that the opening of a branch office by an established hospice within its current service area is not the construction, development, or other establishment of a new institutional health service for which a CON is required. As explained above, this holding is applicable only to Chapter 131E as it existed in July 2005. We further hold that the Greensboro hospice office proposed

by Liberty is not located within the current service area of its Fayetteville hospice; therefore, the proposed office is a "new institutional health service" for which Liberty must obtain a CON.

Finally, we hold that the issuance of a "No Review" letter, which results in the establishment of "a new institutional health service" without a prior determination of need, substantially prejudices a licensed, pre-existing competing health service provider as a matter of law.

Accordingly we affirm the final agency decision entered on or about 12 June 2006 by DHHS, DFS Director Robert J. Fitzgerald awarding summary judgment to HGI.

AFFIRMED.

Judges McCULLOUGH and CALABRIA concur.