RIDGE CARE, INC., KERNER RIDGE, LLC, MALLARD RIDGE, LLC, DEERFIELD RIDGE, LLC, WALNUT RIDGE ASSISTED LIVING, LLC, AND BLUESTONE ENTERPRISES, INC., PETITIONERS v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, ROBERT J. FITZGERALD IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DIVISION OF FACILITY SERVICES, AND THE STATE OF NORTH CAROLINA, RESPONDENTS AND CARILLON ASSISTED LIVING, LLC, RESPONDENT-INTERVENOR

No. COA10-1316

(Filed 16 August 2011

1. **Hospitals and Other Medical Facilities—certificate of need—adult care home facilities—settlement authority**

     The North Carolina Department of Health and Human Services had the authority to enter into a settlement which allowed a number of adult care home facilities to be constructed outside the certificate of need process, but limited the effect of a prior judicial decision that would have allowed many more.

2. **Hospitals and Other Medical Facilities—certificate of need—settlement agreement—prior decision**

     A contention regarding the constitutional authority of the North Carolina Department of Health and Human Services (DHHS) to enter a settlement agreement that made the certificate of need law not applicable to respondent intervenor was determined by a prior case, which held that N.C.G.S. § 150B-22 provided DHHS with the authority to enter settlement agreements.

RIDGE CARE, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[214 N.C. App. 498 (2011)]

3. **Constitutional Law—certificate of need—settlement—equal protection and due process**

Petitioners' right to due process and equal protection was not violated by a settlement between the North Carolina Department of Health and Human Services and respondent intervenor that allowed the development of adult care home beds without meeting the certificate of need conditions required of other providers. Respondent intervenor already had the right to develop many more beds under a prior decision, and the settlement provided new limitations on development rather than granting respondent intervenor any new rights.

4. **Attorney General—DHHS settlement—signature not required**

The Attorney General was not required to execute a settlement between an adult care home and the North Carolina Department of Health and Human Services. Moreover, a Joint Motion to Dismiss Appeal Based Upon Settlement by the Parties was signed by the Solicitor General on behalf of the Attorney General.

5. **Administrative Law—contested case—no showing of prejudice**

The trial court did not err by affirming a final agency decision against petitioners in an action concerning the development of adult care home facilities. There was no showing of substantial prejudice.

Appeal by petitioners from order entered 6 July 2010 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 11 May 2011.

*Smith Moore Leatherwood LLP, by Susan M. Fradenburg, for petitioners-appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General Angel E. Gray, for respondents-appellees.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr. and Charles F. Marshall III, for respondent-intervenor-appellee.*

STEELMAN, Judge.

This Court is bound by its prior decisions and must hold that DHHS was authorized to enter into a settlement agreement with

Carillon in 2007. Where the 2000 and 2007 Settlement agreements were outside of the CON Law, petitioners' constitutional challenges must fail. The Attorney General was not required to execute the 2007 Settlement Agreement. Petitioners have failed to demonstrate prejudice.

## I. Factual and Procedural Background

In 1997, the North Carolina General Assembly enacted a law that imposed a moratorium on the development of adult care home ("ACH") facilities. Under the moratorium, the North Carolina Department of Health and Human Services ("DHHS") could not approve the addition of any ACH beds unless they qualified for one of five exemptions provided by statute. The General Assembly subsequently passed a statute ("2001 Session Law") providing for the expiration of the moratorium on 31 December 2001. 2001 N.C. Sess. Laws 234, § 3(b). The 2001 Session Law also provided that after the expiration of the moratorium all ACH facilities would be subject to the Certificate of Need ("CON") Law, N.C. Gen. Stat. § 131E-175, *et seq.*, unless the developer had obtained a statutory exemption from the moratorium and retained its exemption by meeting new financing, construction, and occupancy deadlines. 2001 N.C. Sess. Laws 234, §§ 2, 3(b1), 3(b2). Prior to the enactment of the 2001 Session Law, ACH facilities were not subject to the requirements of the CON Law. 2001 N.C. Sess. Laws 234, § 2.

The enactment of the moratorium and the 2001 Session Law gave rise to three legal proceedings involving Carillon Assisted Living, LLC ("Carillon").

In the first proceeding, Carillon contested the application of the moratorium to a number of its planned ACH facilities. This case was resolved by a settlement agreement between DHHS and Carillon ("2000 Settlement") while an appeal to this Court was pending. In the 2000 Settlement, Carillon agreed to forego its constitutional challenges to the moratorium and to relinquish its right to develop 8 of the 27 ACH facilities that the Superior Court had determined were exempt from the moratorium. In return, Carillon received a contractual right to develop 19 ACH facilities ("settlement projects").

In the second proceeding, Carillon asserted that the 2001 Session Law did not apply either to its 19 settlement projects or to 43 additional proposed ACH facilities ("gap projects"), for which it had submitted plans during a gap in the moratorium. This Court held that the moratorium and the 2001 Session Law were inapplicable to the settlement projects and the gap projects. *Carillon Assisted Living, LLC*

*v. N.C. Dep't of Health & Human Servs. (Carillon I)*, 175 N.C. App. 265, 272, 623 S.E.2d 629, 634 (2006), *appeal dismissed*, 361 N.C. 218, 641 S.E.2d 802 (2007). With respect to the settlement projects, this Court held that Carillon had a contractual right to develop the 19 settlement projects, not an exemption from the moratorium. *Id.*

Under this Court's decision in *Carillon I*, Carillon had a right to develop a total of 62 ACH facilities (more than 5,000 ACH beds) in 59 counties throughout North Carolina without obtaining a CON. While DHHS's appeal to the North Carolina Supreme Court was pending, Carillon and DHHS entered into a settlement agreement ("2007 Settlement"). This agreement gave Carillon a contractual right to develop 2,250 ACH beds in 23 counties, subject to specific timelines and notice requirements.

The instant appeal arises out of the third proceeding. Petitioners, all of which are corporations formed to operate ACH facilities in North Carolina, filed a contested case to challenge the validity of the 2007 Settlement before the Office of Administrative Hearings ("OAH"). On 6 August 2007, Administrative Law Judge ("ALJ") Donald W. Overby granted summary judgment in favor of DHHS and Carillon. DHHS adopted the ALJ's decision in its final agency decision. Petitioners filed a Petition for Judicial Review of the final agency decision and a Complaint for Declaratory Relief in the Superior Court of Wake County as well as a direct appeal to this Court. This Court dismissed petitioners' direct appeal for lack of jurisdiction in an unpublished opinion, determining that our holding in *Carillon I* foreclosed petitioners' argument that the 2007 Settlement constituted an exemption from the CON Law. *Ridge Care, Inc. v. N.C. Dept of Health and Human Servs. (Carillon II)*, 195 N.C. App. 598, 673 S.E.2d 799 (2009) (unpublished).

Subsequently, the Superior Court of Wake County affirmed the final agency decision granting summary judgment for DHHS and Carillon and dismissed petitioners' claim for declaratory relief.

Petitioners appeal.

## II. Standard of Review

When a court conducts a review of an administrative agency's final decision, the nature of the error asserted dictates the standard of review. *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Servs.*, 189 N.C. App. 534, 543, 659 S.E.2d 456, 462, *aff'd per curiam*, 362 N.C. 504, 666 S.E.2d 749 (2008). Errors of law are reviewed *de novo*. *Id.* Because the decision to grant summary judgment is a mat-

ter of law, it is reviewed *de novo. Presbyterian Hosp. v. N.C. Dept. of Health & Human Servs.*, 177 N.C. App. 780, 782, 630 S.E.2d 213, 214 (2006), *disc. review denied*, 361 N.C. 221, 642 S.E.2d 446 (2007).

### III. DHHS's Statutory Authority to Enter the Agreement

[1] In their first and fourth arguments petitioners contend that the trial court erred in affirming the final agency decision because in the 2007 Settlement DHHS ceded control of the CON process to Carillon and because DHHS exceeded its authority in entering into the 2007 Settlement. Since these arguments are interrelated, we consider them together. We disagree that the trial court erred.

Petitioners argue that DHHS does not have the statutory authority to enter a contract in which it gives up its power to apply the CON Law to Carillon's development projects, citing *Gaddis v. Cherokee County Rd. Comm'n*, 195 N.C. 107, 111, 141 S.E. 358, 360 (1928), in which our Supreme Court held that "administrative boards, exercising public functions, cannot by contract deprive themselves of the right to exercise the discretion delegated by law, in the performance of public duties."

This Court's decision in *Carillon I* contains a number of rulings that are ultimately dispositive of the instant appeal. This Court held: (1) Carillon had a contractual right under the 2000 Settlement to construct 19 facilities, unrestricted by the 2001 Session Law, under which developers of ACH facilities had to follow the CON law or meet new exemption requirements; (2) DHHS had the authority to enter into this settlement; and (3) the requirements of the moratorium and the 2001 Session Law were not applicable to Carillon's 43 gap projects. *Carillon I*, 175 N.C. App. at 270-72, 623 S.E.2d at 633-34. The effect of this decision was to authorize Carillon to construct over 5,000 ACH beds in 59 counties without complying with the CON requirements and without time restrictions.

Since there was a dissent in the Court of Appeals, DHHS appealed the decision to the North Carolina Supreme Court as a matter of right. Prior to the matter being heard in the Supreme Court, Carillon and DHHS entered into the 2007 Settlement Agreement. That agreement reduced the number of beds that Carillon could construct outside of the CON process from over 5,000 to 2,250, reduced the number of counties in which the facilities could be constructed from 59 to 23, and established specific timelines and notice requirements. As a result of the 2007 Settlement, the appeal to the Supreme Court was dismissed. *Carillon v. DHHS*, 361 N.C. 218, 641 S.E.2d 802 (2007).

The *Carillon I* decision placed DHHS upon the horns of a difficult dilemma. It could pursue its appeal to the Supreme Court and run the risk that the Court of Appeals decision would be affirmed, or it could limit the effect of *Carillon I* by entering into a settlement agreement that cut in half the number of beds that could be constructed outside of the CON process. Faced with these unpalatable choices, we cannot say that DHHS acted unreasonably in choosing to settle the case. Given the broad scope of DHHS' authority to settle cases enunciated in *Carillon I*, we hold that DHHS was within its authority to enter into the 2007 Settlement. *See Carillon I*, 175 N.C. App. at 270-71, 623 S.E.2d at 633-34.

We further note that under the explicit holding of this Court in *Carillon II*, the 2007 Settlement was not an exemption to the CON statute. *Carillon II*, 195 N.C. App. 598, 673 S.E.2d 799. This Court is bound by its prior holdings in *Carillon I* and *Carillon II*. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

These arguments are without merit.

## IV. Constitutionality of the 2007 Settlement

In their second argument, petitioners contend that the trial court erred in affirming the final agency decision granting summary judgment because the 2007 Settlement was unconstitutional. We disagree.

## A. Separation of Powers

[2] Petitioners contend that DHHS did not have the constitutional authority to enter an agreement that makes the CON Law inapplicable to Carillon.

Under the North Carolina Constitution the duty of the executive branch, to which DHHS belongs, is to ensure that legislation enacted by the General Assembly is "faithfully executed." N.C. Const., Art. III § 5(4). Petitioners argue that by entering into the 2007 Settlement DHHS violated its duty to faithfully execute the CON Law because under the agreement Carillon can add ACH beds regardless of the project's conformity with the CON requirements, which were created to "control costs, utilization, and distribution of new health service facilities." N.C. Gen. Stat. § 131E-175.

In *Carillon I*, this Court held that DHHS has the authority to enter settlement agreements pursuant to N.C. Gen. Stat. § 150B–22 and that there is no need to consider whether there is a constitutional limita-

tion on this authority because the case could be resolved on statutory grounds. *See Carillon I*, 175 N.C. App. 271, 623 S.E.2d at 633-34. We are bound by this holding for the reasons discussed above.

### B. Due Process and Equal Protection

**[3]** Petitioners next contend that the trial court erred in affirming the final agency decision granting summary judgment because the 2007 Settlement violates petitioners' right to due process and equal protection of the laws.

Petitioners argue that the 2007 Settlement is unconstitutional because it gave Carillon the right to develop ACH beds without regard to whether Carillon had met the conditions that other providers are required to meet under the CON Law. However, prior to the 2007 Settlement, Carillon already had the right to develop over 5,000 ACH beds without being subject to the CON Law under this Court's decision in *Carillon I*. Rather than giving Carillon any new rights, the 2007 Settlement actually provided new limitations on Carillon's right to develop ACH beds. In addition to reducing the total number of beds that Carillon was able to build without meeting the requirements of the CON Law, the agreement also imposed notice and timing restrictions on Carillon to enable DHHS to effectively perform its inventory and planning functions. Thus, DHHS's decision to enter the 2007 Settlement does not raise due process or equal protection concerns.

This argument is without merit.

### V. Execution of 2007 Settlement Agreement

**[4]** In their third argument, petitioners contend that the trial court erred in affirming the final agency decision because the 2007 Settlement was not executed by a Special Assistant Attorney General on behalf of the State. We disagree.

Petitioners cite to no statutory authority for the proposition that the Attorney General was required to execute the 2007 Settlement. Rather, they cite to language in *Carillon I* noting that the 2000 Settlement was signed by both DHHS and a Special Deputy Attorney General. *Carillon I*, 175 N.C. App. at 271, 623 S.E.2d at 634. *Carillon I* noted the case of *Tice v. Depart. of Transportation*, 67 N.C. App. 48, 312 S.E.2d. 241 (1984), and its holding that when the Attorney General has control of an action, he may settle it when he determines that it is in the best interest of the State to do so. *Carillon I*, 175 N.C. App. at 271, 623 S.E.2d at 634. This holding goes to the authority of the

Attorney General to settle a case, but it does not state that this is the exclusive method for settling a case. *Carillon I* specifically references the provisions of N.C. Gen. Stat. § 150B-22 as being the authority for the 2000 Settlement Agreement. *Id.* at 271, 623 S.E.2d at 234. *Carillon I* was a proceeding brought pursuant to § 150B of the General Statutes. *Id.* at 268, 623 S.E.2d at 632.

The 2007 Settlement was between Carillon on the one hand and DHHS and the State of North Carolina on the other. The agreement was executed by DHHS "on behalf of itself and of the State of North Carolina" by Robert J. Fitzgerald, Director of the Division of Facility Services of DHHS. There is no requirement in § 150B-22 that the Attorney General must execute a settlement. We hold that the signature of the Attorney General was not required in the 2007 Settlement.

Moreover, the Attorney General was undoubtedly aware that the case had been settled by DHHS on behalf of the State because the Attorney General, along with the attorneys for Carillon, filed a Joint Motion to Dismiss Appeal Based Upon Settlement by the Parties ("Joint Motion"), *Carillon v. N.C.D.H.H.S.*, No. 54A06 (N.C. Jan. 4, 2007). In support of this motion, the parties asserted that "[o]n January 3, 2007 the State and Carillon entered into a settlement agreement that resolves all disputes and controversies between the parties with respect to the subject matter of this appeal." The Joint Motion was signed by the Solicitor General, Christopher G. Browning Jr., on behalf of Attorney General Roy Cooper.

This argument is without merit.

## VI. Prejudice

[5] In their fifth argument, petitioners contend that the trial court erred in affirming the final agency decision granting summary judgment because they have demonstrated they were substantially prejudiced as a matter of law. We disagree.

Under N.C. Gen. Stat. § 150(B)-23(a) a petition for a contested case hearing in the OAH "shall state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights." The petitioner has the burden of proving that the agency substantially prejudiced petitioner's rights. *Britthaven, Inc. v. N.C. Dep't of Human Resources*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459, *disc. review denied*, 341 N.C. 418, 461 S.E.2d 754 (1995).

First, petitioners assert that they have demonstrated prejudice as a matter of law under this Court's decision in *Hospice & Palliative Care Center of Greensboro v. N.C. Dep't. of Health and Human Servs.*, 185 N.C. App. 1, 16-18, 647 S.E.2d 651, 661-62 (2007). In that case, we held that DHHS's grant of an exemption from the CON Law "substantially prejudices a licensed, pre-existing competing health service provider as a matter of law" because it keeps the competitor from being able to protect its interests in "ensuring that unnecessary and duplicative hospice services are not opened in its service area" by filing written comments on the CON proposal. *Id.*

In *Hospice of Greensboro*, competitors were prejudiced because they would have had the opportunity to comment on the CON process if the agency had not granted an exemption to the CON Law. However, even if DHHS had not entered the 2007 Settlement, it could not have required Carillon to submit a CON application in order to give petitioners the opportunity to comment on Carillon's plans because the CON Law was held to be inapplicable to Carillon's projects. *Carillon I*, 175 N.C. App. at 272, 623 S.E.2d at 634. We are bound by this decision. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d 30 at 37.

Second, petitioners claim that they were prejudiced as a matter of law because Carillon's ability to build an undetermined number of new ACH facilities without obtaining a CON may cause petitioners to face increased costs and a loss of staff and patients. This Court recently rejected a claim of substantial prejudice because the party did not provide data, analysis, or support for its claim that it would lose patients and suffer economic harm as a result of the agency decision. *See Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs.*, —— N.C. App. ——, ——, 696 S.E.2d 187, 194-95 (2010), *disc. review denied*, —— N.C. ——, 705 S.E.2d 739, *disc. review denied*, —— N.C. ——, 705 S.E.2d 753 (2011). Petitioner's claims of potential harm should Carillon decide to develop facilities in the counties where petitioners are located or where they may wish to file CON applications are similarly unsupported. There was no evidence presented that Carillon is planning to develop facilities in those counties or that petitioners have suffered any actual harm.

This argument is without merit.

AFFIRMED.

Judges STEPHENS and HUNTER, JR., ROBERT N. concur.