NO. COA13-1322

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

SURGICAL CARE AFFILIATES, LLC and
BLUE RIDGE DAY SURGERY CENTER,
L.P.,
    Petitioners,

v.                                        Office of
                                            Administrative Hearings
                                            No. 12 DHR 09678
N.C. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, DIVISION OF HEALTH
SERVICE REGULATION, CERTIFICATE OF
NEED SECTION,
    Respondent,

and

WAKEMED,
    Respondent-Intervenor.


Appeal by Petitioners from Final Decision entered 23 July 2013 by Judge Eugene J. Cella in the Office of Administrative Hearings. Heard in the Court of Appeals 23 April 2014.


    *Nexsen Pruet, PLLC, by Frank S. Kirschbaum, Robert A. Hamill, and Rachael Lewis Anna, for Petitioners.*

    *Attorney General Roy Cooper, by Special Deputy Attorney General June S. Ferrell, for Respondent.*

    *Smith Moore Leatherwood LLP, by Maureen Demarest Murray, Terrill Johnson Harris, and Carrie A. Hanger for Respondent-Intervenor.*


STEPHENS, Judge.

*Background*

This case involves the proposed relocation of two specialty ambulatory operating rooms from Southern Eye Ophthalmic Surgery Center ("Southern Eye")[1] to the WakeMed health care system's Raleigh Campus, where the operating rooms would be used as "shared operating rooms" for inpatients and outpatients. WakeMed is a nonprofit corporation that owns and operates multiple health care facilities in the Triangle region of North Carolina. WakeMed purchased Southern Eye on 10 May 2012 with the intention of relocating its operating rooms to WakeMed Raleigh. Petitioners Surgical Care Affiliates, LLC ("SCA") and Blue Ridge Day Surgery Center, L.P. ("Blue Ridge")[2] operate a multispecialty ambulatory surgical facility in Raleigh,[3] are direct competitors

---

[1] A specialty ambulatory operating room is a surgical facility that is used for single-day, outpatient surgical procedures limited to one specialty area. *See* N.C. Gen. Stat. § 131E-176(1b), (24f) (2013). For Southern Eye, that specialty is ophthalmic surgery.

[2] SCA is the managing partner of Blue Ridge and has an ownership interest in the partnership.

[3] A multispecialty ambulatory surgical facility is a surgical facility that is used for same-day surgical procedures occurring over at least three defined specialty areas, including general surgery. *See* N.C. Gen. Stat. § 131E-176(15a).

with WakeMed, and contest the proposed relocation of these rooms.

WakeMed filed a certificate of need ("CON") application with the North Carolina Department of Health and Human Services ("the Agency") on 16 April 2012, officially proposing to move the two operating rooms to its Raleigh Campus. The Agency conditionally granted that application on 27 September 2012. Following the Agency's decision, SCA and Blue Ridge petitioned for a contested case hearing to challenge the decision.[4] An administrative law judge with the Office of Administrative Hearings ("the ALJ") heard the matter beginning 15 April 2013 and affirmed the Agency's decision on 23 July 2013 by final decision. Petitioners appeal from the ALJ's final decision.

*Discussion*

On appeal, Petitioners argue that the ALJ erred in affirming the Agency's decision because (1) the Agency failed to apply certain agency-created regulations, referred to by Petitioners as "the conversion rules," to WakeMed's CON

---

[4] A "contested case" is an "administrative proceeding [held under Chapter 150B of the North Carolina General Statutes] to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty." N.C. Gen. Stat. § 150B-2(2) (2013).

application and (2) this failure "substantially prejudice[d] [Petitioners'] rights." We affirm the decision of the ALJ on the issue of substantial prejudice and, therefore, do not reach the issue of the application of the conversion rules.

*I. Standard of Review*

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2 (2006) (citation omitted). Pursuant to section 150B-51 of the North Carolina General Statutes:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under [sections] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

(c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) . . . , the court shall conduct its review of the final decision using the *de novo* standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) . . . , the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51(b)-(c) (2013) (italics added). "Under *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *McMillan v. Ryan Jackson Props., LLC*, __ N.C. App. __, __, 753 S.E.2d 373, 377 (2014) (citation and internal quotation marks omitted).

In applying the whole record test, the reviewing court is required to examine all competent evidence . . . in order to determine whether the [final] decision is supported by "substantial evidence." Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs.*, 205 N.C. App. 529, 535, 696 S.E.2d 187, 192 (2010) (citations

omitted), *disc. rev. denied*, __ N.C. __, 705 S.E.2d 753 (2011) [hereinafter *Parkway Urology*].

*II. Substantial Prejudice*

After the Agency decides to issue, deny, or withdraw a CON or exemption or to issue a CON pursuant to a settlement agreement, "any affected person [as defined by section 131E-188(c)] shall be entitled to a contested case hearing under Article 3 of Chapter 150B of the General Statutes." *Id.* at 535, 696 S.E.2d at 192 (citation omitted). Subsection (c) defines an "affected person" as, *inter alios*, "any person who provides services, similar to the services under review, to individuals residing within the service area or the geographic area proposed to be served by the applicant." N.C. Gen. Stat. § 131E-188(c) (2013). In addition to meeting this "prerequisite[] to filing a petition for a contested case hearing regarding CONs," the petitioner must also satisfy "the actual framework for *deciding* the contested case [as laid out in section 150B-23(a) of] Article 3 of Chapter 150B of the General Statutes." *Parkway Urology*, 205 N.C. App. at 536, 696 S.E.2d at 193 (citation omitted; emphasis in original).

Section 150B-23(a) of the North Carolina General Statutes provides that a petitioner must state facts in its petition which

> tend[] to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise *substantially prejudiced* the petitioner's rights *and* that the agency:
>
> (1) Exceeded its authority or jurisdiction;
>
> (2) Acted erroneously;
>
> (3) Failed to use proper procedure;
>
> (4) Acted arbitrarily or capriciously; or
>
> (5) Failed to act as required by law or rule.

N.C. Gen. Stat. § 150B-23(a) (2013) (emphasis added).[5] This Court has interpreted subsection (a) to mean that the ALJ in a contested case hearing must "determine whether the petitioner has met its burden in showing that the agency substantially prejudiced [the] petitioner's rights." *Parkway Urology*, 205 N.C. App. at 536, 696 S.E.2d at 193 (citation and emphasis omitted)

---

[5] Section 150B-23 was amended in 2013 to include an additional subsection. This amendment is unrelated to the issues raised by the parties in this appeal. *See* 2013 N.C. Sess. Laws 397, sec. 4.

(overruling the petitioner's argument that it was not required to show substantial prejudice as long as it could show that it was an affected person). Therefore, under section 150B-23 and our opinion in *Parkway Urology*, a petitioner in a CON case must show (1) either that the agency (a) has deprived the petitioner of property, (b) ordered the petitioner to pay a fine or civil penalty, or (c) substantially prejudiced the petitioner's rights, *and* (2) that the agency erred in one of the ways described above. *See* N.C. Gen. Stat. § 150B-23(a); 205 N.C. App. at 536, 696 S.E.2d at 193; *see also Caromont Health, Inc. v. N.C. Dep't of Health & Human Servs.*, __ N.C. App. __, __, 751 S.E.2d 244, 248 (2013) ("The administrative law judge must, therefore, determine *whether the petitioner has met its burden in showing that the agency substantially prejudiced* [*the*] *petitioner's* rights, as well as whether the agency *also acted* outside its authority, acted erroneously, acted arbitrarily and capriciously, *used improper procedure*, or failed to act as required by law or rule.") (citation omitted; certain emphasis added).

Here, the ALJ concluded in the final decision that Petitioners were "'affected persons' because they provide surgical services that are similar to services provided by

WakeMed," and the parties do not dispute that conclusion. In addition, Petitioners do not argue that the Agency deprived them of property or ordered them to pay a fine or civil penalty. Rather, Petitioners contend that they were substantially prejudiced by the Agency's decision, which was erroneously and improperly decided. Specifically, Petitioners argue that they were substantially prejudiced either (1) as a matter of law or, in the alternative, (2) because the Agency's decision gives WakeMed an unfair competitive advantage amounting to substantial prejudice. We disagree.

*(1) Substantial Prejudice as a Matter of Law*

Petitioners contend that the Agency's decision substantially prejudiced their rights as a matter of law because (a) the ALJ had already determined that Petitioners were substantially prejudiced and (b) the Agency's alleged failure to follow its own rules necessarily constitutes substantial prejudice as a matter of law. We are unpersuaded.

*(a) The ALJ's Statement*

Petitioners assert that the Agency's decision substantially prejudiced their rights as a matter of law because the ALJ made a finding to that effect during the contested case hearing. This argument takes the ALJ's statement out of context. Responding to

WakeMed's motion for summary judgment, the ALJ made the following comment at the hearing:

> The Court: All right. As far as this particular motion is concerned and ruling on the motion for summary judgment, I'm going to find that I think there is enough evidence on the record that there is substantial prejudice by not applying this rule and consequently deny the motion for summary judgment.

Following that ruling, Wakemed presented evidence, and Petitioners presented rebuttal witnesses. Afterward, the parties attempted to clarify the ALJ's initial ruling:

> [Counsel for WakeMed]: . . . [I]t's our understanding, Your Honor, that you deferred — that you denied the motion [for summary judgment] and decided to have a hearing on the issue of whether the multispecialty rules applied. . . .
>
> . . . .
>
> The summary judgment motion that we filed was to say that they were not substantially prejudiced as a matter of law, and that was what was renewed yesterday and that you also denied. . . .
>
> . . . .
>
> The Court: I don't know that I can agree or disagree —
>
> . . . .
>
> — Without sitting down and thinking about it and looking at it.

> [Counsel for the Agency]: I think, Judge . . . , that the heart of this is we understood that you did not grant summary judgment in favor of [SCA], but you also didn't grant summary judgment the other way and say that the Agency was correct on the rule. You said, "I'd go to trial[,] and I'll hear the evidence."
>
> . . . .
>
> The Court: *I wasn't deciding on the merits, no.*

(Emphasis added). The ALJ's comments make clear that his preliminary ruling constituted a denial of Respondents' motion for summary judgment on grounds that Petitioners had presented enough evidence to proceed with the hearing. It was not a final determination on the merits and does not control or undermine the ALJ's ultimate, written determination, following the presentation of the parties' evidence, that Petitioners failed to show substantial prejudice. Accordingly, Petitioners' argument that the ALJ determined the issue of substantial prejudice in their favor at the contested case hearing is overruled.

### (b) Failure to Follow Rules as Substantial Prejudice

Petitioners also argue that the Agency's alleged failure to apply its own rules constitutes substantial prejudice as a matter of law, citing *N.C. Dep't of Justice v. Eaker*, 90 N.C.

App. 30, 367 S.E.2d 392 (1988), *overruled on other grounds*, *Batten v. N.C. Dep't of Corrs.*, 326 N.C. 338, 389 S.E.2d 35 (1990); *Hospice at Greensboro, Inc. v. N.C. Dep't of Health & Human Servs.*, 185 N.C. App. 1, 647 S.E.2d 651, *disc. review denied*, 361 N.C. 692, 654 S.E.2d 477–78 (2007) [hereinafter *Hospice at Greensboro*]; and *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 398 S.E.2d 466 (1990) [hereinafter *HCA Crossroads*] for support. This argument is without merit.

Petitioners cite *Eaker* for the rule that a plaintiff need not "show prejudice once he carries his burden of showing that the Department [of Justice] failed to follow the [State Personnel] Commission's policies," 90 N.C. App. at 37, 367 S.E.2d at 397, and seek to apply that rule here. In *Eaker*, the Department of Justice attempted to eliminate a research associate position in the Department's Sheriffs' Standards Division. 90 N.C. App. at 31, 367 S.E.2d at 394. The research associate position belonged to the petitioner, who sought a contested case hearing following his termination. *Id.* The petitioner alleged that the Department's actions were the result of political discrimination and "that the Department failed to comply with its own policies or those of the State Personnel

Commission regarding 'reductions in force.'" *Id.* The State Personnel Commission rejected the petitioner's political discrimination claim, but agreed that the Department had failed to follow the Commission's policies for a reduction in force and recommended that the petitioner be reinstated to his position. *Id.* at 31-32, 367 S.E.2d at 394. The case was appealed to the trial court, which reversed the Commission on grounds that the Department had followed all mandatory policies for reductions in force and, even if it had not followed those policies, that the "petitioner had failed to show [prejudice in the form of] a substantial chance of a different result." *Id.* at 32, 367 S.E.2d at 394.

On appeal, this Court reversed the trial court because it "improperly placed [the] burden on the Department [to prove that appropriate procedures for personnel reduction were utilized]." *Id.* at 36, 367 S.E.2d. at 397. We also elected to address the Department's remaining arguments and concluded that the petitioner "does not have to show prejudice once he carries his burden of showing that the Department failed to follow the Commission's policies." *Id.* at 37-38, 367 S.E.2d at 397-98. We reasoned that the Commission's policies were promulgated pursuant to statutory authority and, thus, had "the force of

law." *Id.* Because the substance of those policies required the Department to consider a number of discretionary factors, however, we pointed out that a showing of prejudice would be "nearly impossible" for the petitioner to achieve. *Id.* Specifically, we observed that

> [t]o show prejudice from failure to follow policy, [the] petitioner would have to show, not only how he stood in relation to other employees in the same class as to type of appointment, length of service, and work performance, but he would have to show the weight which the Department would attribute to each of those factors. The Commission and the reviewing court would be relegated to speculating how the Department would weigh each factor.

*Id.* at 38, 367 S.E.2d at 398. Therefore, we held that it was sufficient to show prejudice for the petitioner to establish that the Department failed to follow the mandatory policies of the Commission, which had been promulgated pursuant to statutory authority. *Id.* A separate showing of prejudice was unnecessary in that circumstance. *Id.*

Assuming without deciding that the *Eaker* opinion raises issues that are analogous to those in this case, its interpretation of prejudice is no longer applicable to section 150B-23(a) of Article 3 of the Administrative Procedure Act. The petitioner in *Eaker* submitted his petition to the State

Personnel Commission on 24 April 1985. 1585 N.C. App. Records & Briefs No. 8710SC857, 2 (1987). At that time, Article 3 of Chapter 150 contained no requirement that a petitioner establish that it had been deprived of property, ordered to pay a fine or penalty, or substantially prejudiced *in addition* to showing that the agency exceeded its authority or jurisdiction, acted erroneously, *failed to use proper procedure*, acted arbitrarily and capriciously, or failed to act as required by law or rule. *See* 1973 N.C. Sess. Laws 1331, sec. 1. Those burdens were added to the statute during the 1985 session of the General Assembly and came into effect on 1 January 1986. 1985 N.C. Sess. Laws 746, secs. 1, 19 ("This act shall not affect contested cases commenced before January 1, 1986."). As this Court has since explained, the amended provisions of section 150B-23(a) require the ALJ in a contested case hearing to "determine whether the petitioner has met its burden in showing that the agency substantially prejudiced [the] petitioner's rights, *and* that the agency *also* acted outside its authority, acted erroneously, acted arbitrarily and capriciously, *used improper procedure*, or failed to act as required by law or rule." *Britthaven, Inc. v. N.C. Dep't of Human Res.*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459 (emphasis modified), *disc. review denied*, 341 N.C. 418,

461 S.E.2d 754 (1995). These burdens require that, when the petitioner alleges that the Agency did not properly apply its own rules, the petitioner *must also* prove, and the ALJ must separately decide the issue of, substantial prejudice, *i.e.*, that the Agency's failure to follow its rules *actually* caused sufficient harm to the petitioner. *See id.; see also Parkway Urology*, 205 N.C. App. at 535-37, 696 S.E.2d at 192-93; N.C. Gen. Stat. § 150B-23(a). The Agency's mere failure to follow its own rules is not enough. Accordingly, Defendant's argument in reliance on *Eaker* is overruled.

We turn now to the next case cited by Petitioners to support their contention that the Agency's alleged failure to follow its rules constitutes substantial prejudice as a matter of law. The petitioner in *Hospice at Greensboro* was a hospice service provider located in Greensboro. 185 N.C. App. at 3-5, 647 S.E.2d at 653-54. Following the Agency's issuance of a "no review" letter, which authorized the respondent to open an office in Greensboro without first obtaining CON review, the petitioner sought a contested case hearing. *Id.* The respondent filed a motion for summary judgment on grounds that the petitioner "was not an 'aggrieved party' because the issuance of [the letter] . . . did not 'substantially prejudice' [the

petitioner's] rights," and that motion was granted. *Id.* at 5–6, 647 S.E.2d at 654–55.

On appeal by the respondent, we affirmed the decision to grant the petitioner's motion for summary judgment because the issuance of the letter, "which result[ed] in the establishment of a new institutional health service without a prior determination of need, substantially prejudice[d the petitioner,] a licensed, pre-existing competing health service provider[,] as a matter of law." *Id.* at 16, 647 S.E.2d at 661. In so holding, we noted that "the CON [s]ection's issuance of [the letter] . . . effectively prevented any existing health service provider or other prospective applicant from challenging [the] proposal [to open a new office] at the agency level, except by filing a petition for a contested case." *Id.* at 17, 647 S.E.2d at 661–62.

In this case, unlike *Hospice at Greensboro*, the Agency conducted a full review of WakeMed's CON application. This review included consideration "of the applications submitted for this cycle[,] . . . the [CON] law, . . . the State Medical Facilities Plan, and other applicable information." The Agency elected to approve WakeMed's application only after completing the CON review process. Petitioners had the opportunity to

comment on the application and took advantage of that opportunity by submitting a detailed discussion of the validity of WakeMed's CON application. In addition, Petitioners participated in a public hearing on 18 June 2012, summarizing their concerns. Thus, Petitioners were not prohibited from challenging WakeMed's CON application at the agency level. Petitioners' argument is overruled as it pertains to *Hospice at Greensboro*.

As for *HCA Crossroads*, the final case cited by Petitioners in support of their position, the controlling issue in that case was "whether the [relevant agency] lost subject matter jurisdiction when it failed to act, within the time prescribed by law, on applications for [CONs] for construction of chemical dependency treatment facilities." 327 N.C. at 574, 398 S.E.2d at 467. On that issue our Supreme Court held that the agency lost its authority to deny applications for CONs by failing to act in a timely manner. *Id.* The Court did not address section 150B-23(a) or the requirement that a petitioner opposing the issuance of a CON must establish substantial prejudice. *See id.* Accordingly, Petitioners' argument in reliance on *HCA Crossroads* is overruled.

Petitioners argue that they were substantially prejudiced as a matter of law because the Agency failed to apply the conversion rules. As discussed above, however, the petitioner must establish that the Agency has deprived it of property, has ordered it to pay a fine or penalty, or has otherwise substantially prejudiced the petitioner's rights, *and*, *in addition*, the petitioner must establish that the agency's decision was erroneous in a certain, enumerated way, such as failure to follow proper procedure or act as required by rule or law. *Parkway Urology*, 205 N.C. App. at 535–37, 696 S.E.2d at 192–93; *see also* N.C. Gen. Stat. § 150B-23(a). These are discrete requirements and proof of one does not automatically establish the other. *See Parkway Urology*, 205 N.C. App. at 535–37, 696 S.E.2d at 192–93; *see generally Britthaven, Inc.*, 118 N.C. App. at 382, 455 S.E.2d at 459 (treating the substantial prejudice and agency error requirements as separate elements to be addressed at the hearing). As we have already stated,

> the ALJ [in a CON case must, in evaluating the evidence,] determine *whether the petitioner has met its burden in showing that* [(1)] *the agency substantially prejudiced* [*the*] *petitioner's rights*, *and* . . . [(2)] acted outside its authority, acted erroneously, acted arbitrarily and capriciously, used improper procedure, or failed to act as required by law or rule.

205 N.C. App. at 536, 696 S.E.2d at 193 (citing *Britthaven, Inc.*, 118 N.C. App. at 382, 455 S.E.2d at 459; certain emphasis added). Therefore, while the Agency's action under part two of this test might ultimately result in substantial prejudice to a petitioner, the taking of the action does not absolve the petitioner of its duty to separately establish the existence of prejudice, *i.e.*, to show *how* the action caused it to suffer substantial prejudice. *See id.* Accordingly, Petitioners' argument that they were substantially prejudiced solely on the basis that the Agency failed to apply the conversion rules is overruled.

*(2) Substantial Prejudice by Competitive Disadvantage*

Second, Petitioners argue that they were substantially prejudiced by the Agency's decision because that decision will likely make it more difficult for Petitioners to acquire additional operating rooms in the future, giving WakeMed a competitive advantage. Again, we disagree.

Medical facilities, including operating rooms, are regulated by chapter 131E of the North Carolina General Statutes ("the Act"). In section 175, the General Assembly stated "[t]hat the proliferation of unnecessary health services facilities results in costly duplication and underuse of facilities, with

the availability of excess capacity leading to unnecessary use of expensive resources and overutilization of health care services." N.C. Gen. Stat. § 131E-175(4). As a consequence, a CON is required for the development of an additional institutional health service, including the use and implementation of an operating room. *See* N.C. Gen. Stat. § 131E-178(a); *see also Hope-A Women's Cancer Ctr., P.A. v. N.C. Dep't of Health & Human Servs.*, 203 N.C. App. 276, 281, 691 S.E.2d 421, 424 (2010) ("The fundamental purpose of the [CON] law is to limit the construction of health care facilities in this [S]tate to those that the public needs and that can be operated efficiently and economically for their benefit."), *disc. review denied*, __ N.C. __, 706 S.E.2d 254 (2011).

In order for the Agency to issue a CON, the proposed project must be "consistent with applicable policies and need determinations in the State Medical Facilities Plan [("SMFP")] . . . ." N.C. Gen. Stat. § 131E-183. The SMFP is a document prepared by the North Carolina State Health Coordinating Council and the Agency "which constitutes a determinative limitation on the provision of any . . . operating rooms . . . that may be approved." N.C. Gen. Stat. §§ 131E-183(a)(1), -176, -177(4). CON review is not typically required,

however, if the party seeking to develop the additional health service acquires an existing health service facility. N.C. Gen. Stat. § 131E-184(a)(8).

In determining whether there is a need for additional health service facilities, the Agency considers a number of factors, including the number of operating rooms currently in use and how regularly those rooms are being used. Operating rooms that are used infrequently are considered "underutilized" and are not a part of the Agency's calculus. At the time WakeMed filed its CON application, there was not a need for additional operating rooms in Wake County.

The operating rooms that WakeMed seeks to relocate from Southern Eye to its Raleigh Campus are currently considered "underutilized." Therefore, they are not counted in the Agency's formula for determining need. At the hearing, Petitioners presented testimony that the operating rooms would no longer be considered underutilized if transferred to the Raleigh Campus. As a result, those rooms would be counted in the Agency's subsequent need determination formula. Petitioners argue that this change constitutes substantial prejudice because it means that the Agency will be less likely to find a need for more operating rooms in the near future and, thus, Petitioners will

be unable to expand their health care service. We do not find merit in Petitioners' argument.

In order to establish substantial prejudice, the petitioner must "provide specific evidence of harm resulting from the award of the CON . . . that went beyond any harm that necessarily resulted from additional . . . competition . . . ." *Parkway Urology*, 205 N.C. App. at 539, 696 S.E.2d at 194–95 ("[The petitioner] did not, however, quantify th[e] financial harm in any specific way, other than testimony regarding the amount of revenue [it] receives . . . ."). The harm required to establish substantial prejudice cannot be conjectural or hypothetical. It must be concrete, particularized, and "actual" or imminent. *See Ridge Care, Inc. v. N.C. Dep't of Health & Human Servs.*, 214 N.C. App. 498, 506, 716 S.E.2d 390, 396 (2011) ("[The p]etitioner[s'] claims of potential harm should [the respondent] decide to develop facilities in the counties where petitioners are located or where they may wish to file CON applications are similarly unsupported. There was no evidence presented that [the respondent] is planning to develop facilities in those counties or that petitioners have suffered any *actual harm*.") (emphasis added).

Petitioners' argument that they were substantially prejudiced by the Agency's decision is based on sheer speculation. They have neither alleged nor proven that the relocation of these two operating rooms has caused them any actual harm. In fact, SCA's vice president of operations admitted during the 15 April 2013 hearing that Petitioners had not undertaken any analysis of the economic impact of the Agency's decision upon them prior to filing their petition. According to the vice president, Petitioners have instead

> look[ed] at the fact that we need additional operating rooms based on surgeons and specialties that we're trying to move in and the space that we need to do those. And to me the harm comes from the surplus and this adding to the surplus and potentially just making it longer before we're ever able to expand.

As the vice president made clear in her testimony, the only purported harm to Petitioners is the possibility that the Agency's decision will make it more difficult for them to expand their business. This concern is based on their understanding of how the need-determination process works. It is not clear, however, that the outcome suggested by Petitioners will occur. When the vice president was asked whether SCA would "definitely decide to apply" for more operating rooms when a need determination is eventually made, she admitted that she could

not be sure because "who knows when that will be and who knows what the situation will be then[.]"

At the moment, the operating rooms are still a part of Southern Eye. They have not been transferred to WakeMed's Raleigh Campus, and an SMFP taking those rooms into account has not been issued. Even if this occurs, however, Petitioners have not presented any evidence that the transfer of these rooms would result in substantial prejudice. Although Petitioners allege that they would like to expand their business, they have not and cannot assert that they will necessarily do so when or if the Agency finds a need. Indeed, it is entirely plausible that a health care provider other than Petitioners would obtain any new operating rooms found to be needed in the future. For these reasons, Petitioners' argument that the relocation of the operating rooms will likely result in substantial prejudice by competitive disadvantage is overruled.

Petitioners have failed to show that the Agency's decision to grant WakeMed's application resulted in substantial prejudice. Because a showing of substantial prejudice is a necessary element of Petitioners' attempt to successfully oppose the Agency's decision, we need not address Petitioners' argument

that the Agency should have applied the conversion rules. We affirm the ALJ's final decision.

AFFIRMED.

Judges HUNTER, JR., ROBERT N., and ERVIN concur.