SCA-Blue Ridge, LLC v. WakeMed, 2016 NCBC 2.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 2470

SCA-BLUE RIDGE, LLC; BLUE RIDGE GP, )
LLC and BLUE RIDGE DAY SURGERY )
CENTER, LP, )
               Plaintiffs )
                               )
                               )
               v. )
                               )
WAKEMED, )
               Defendant )

**OPINION AND ORDER**

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court upon Defendant's Motion for Judgment on the Pleadings (the "Motion for Judgment"). On December 1, 2015, the Court held a hearing on the Motion for Judgment.

THE COURT, having considered the Motion for Judgment, the briefs in support of and opposition to the Motion for Judgment, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES as follows.

    *Wyrick Robbins Yates & Ponton LLP, by Frank Kirschbaum, Esq. and Paul J. Puryear, Jr., Esq., for Plaintiffs.*

    *Smith Moore Leatherwood LLP, by William R. Forstner, Esq. and Maureen Demarest Murray, Esq., for Defendant.*

McGuire, Judge.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

1.     In 1993 Plaintiff SCA-Blue Ridge, LLC ("SCA-Blue Ridge") developed Plaintiff Blue Ridge Day Surgery Center, LP ("Blue Ridge DSC"). Blue Ridge DSC was a

limited partnership, and it operated ambulatory surgical facilities ("ASF") in which patients receive outpatient surgical services. In order to operate an ASF, a health care provider must have a Certificate of Need ("CON") from the North Carolina Department of Health and Human Services, Division of Health Service Regulation ("DHHS"). DHHS limits the number of CONs it permits in a geographical area based on factors including patient needs and the utilization of existing surgical facilities.[1] SCA-Blue Ridge was the general partner of Blue Ridge DSC until 2010.

2.     Defendant WakeMed is a non-profit corporation organized and existing under the laws of the State of North Carolina. In 2010, WakeMed sought to invest in Blue Ridge DSC. As a result of negotiations between the parties, SCA-Blue Ridge and WakeMed formed Plaintiff Blue Ridge GP ("Blue Ridge GP") to serve as Blue Ridge DSC's general partner effective April 1, 2010. WakeMed owned a 51% interest in Blue Ridge GP, and SCA-Blue Ridge owned a 49% interest. Blue Ridge GP held a 40% interest in Blue Ridge DSC. The remaining 60% interest in Blue Ridge DSC was held by the limited partners which included individual physicians and SCA-Blue Ridge.

3.     SCA-Blue Ridge and WakeMed entered into the Blue Ridge GP Operating Agreement (the "Operating Agreement") to govern their relationship in Blue Ridge GP. The Operating Agreement, however, provided that neither SCA-Blue Ridge nor WakeMed was a manager. Instead, the parties agreed that the LLC would be managed by a five member Board of Management ("the Board").[2] Three members of the Board were appointed by WakeMed and two members were appointed by SCA-Blue Ridge.[3] The Operating Agreement further provided that "[b]oard members shall be entitled to bear in mind and act on the

---

[1] Am. Compl. ¶¶ 6-7.
[2] Op. Ag. § 10.1(a).
[3] *Id.*

interests of the Member that appointed them."[4] Routine business matter were to be decided by a simple majority vote of the Board,[5] but exceptional decisions required a supermajority vote of four Board members.[6] For example, decisions including the sale or encumbrance of the LLC's assets, development or opening of additional ASFs, dissolution, incurring debt to the LLC, and amendment of the Operating Agreement required supermajority approval.[7] In other words, significant decisions regarding the operation of Blue Ridge GP required votes from Board members appointed by both SCA-Blue Ridge and WakeMed.

4. In addition, with regard to the respective rights and obligations of SCA-Blue Ridge and WakeMed, the Operating Agreement recognized the restrictions on certain actions by the LLC that might be required because of the tax-exempt and charitable status of WakeMed, the parties' respective rights in certain circumstances to act in their own self-interests, and a consequent limitation on the fiduciary responsibilities of Board members. The Operating Agreement contained, *inter alia*, the following pertinent provisions:

a. All Members are aware of the limitation on the actions of the Company due to the tax-exempt status and charitable purpose of WakeMed, and each Member agrees that any decision of the Company (i) to forego an action which would be inconsistent with the tax-exempt status of WakeMed, (ii) to take an action which furthers the charitable purposes over any profitmaking motives of the Company, or (iii) to take any action that furthers the activities of a WakeMed Affiliate that provides surgical services in an acute care hospital or medical clinic within the area served by the Centers, shall not be a breach of the duty of loyalty or a breach of any fiduciary duty to the Company, notwithstanding that any such decision is not in the best interests of the Company. § 2.3;

b. From the date hereof until the end of one (1) year from the date that WakeMed is no longer a Member of the Company [Blue Ridge GP] (the "Restricted Period"), neither WakeMed nor any Affiliate of WakeMed shall, directly or indirectly, without the prior consent of SCA-Blue Ridge, through one or more intermediaries, partners, or members, hold or acquire any direct or indirect ownership interest in, or manage, lease, develop, or otherwise have any

---

[4] *Id.*
[5] *Id.* at § 10.1(b).
[6] *Id.* at § 10.3.
[7] *Id.*

financial interest (through a corporation, partnership, trust, or other entity in which WakeMed owns or has a beneficial interest) in any business or entity which develops, owns, manages, leases, or provides property to, a facility or business that performs outpatient surgery in a freestanding ambulatory surgery center (a "Competing Facility") within a two (2) mile radius of the Center (the "Restricted Area"); provided, however that neither WakeMed nor any Affiliate of WakeMed shall be prevented from owning less than 5% of the voting stock of a publicly-held company which owns or operates one or more healthcare facilities. This Section shall continue to apply during the Restricted Period to WakeMed if WakeMed ceases to be a Member. §17.1 (a);

c. Members and their Affiliates . . . shall be permitted to engage in other business endeavors, including those which may compete with the Company... § 2.5(i);

d. Members and their Affiliates . . . shall not be under any obligation to offer business opportunities to the [LLC.]   § 2.5 (ii);

e. Board members shall be entitled to bear in mind and act on the interests of the Member that appointed them.  § 10.1(a);

f. Whenever in this Agreement a Member, Board member or officer is permitted or required to make a decision (i) in its "discretion" or under a grant of similar authority or latitude, the Person shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person; § 16.3(c);

g. If and to the extent that, at law or in equity, a Member, officer, or Board member has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Member, such Member, officer, or Board member acting under this Agreement shall not be liable to the Company or to any other Member for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Member, officer, or Board member otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Member, officer, or Board member. § 16.3(a); and,

h. In the absence of bad faith (such as taking action for the purpose of injuring the Company) by the Member, Board member or officer, the resolution, action or term so made, taken or provided by the Member, Board member, or officer shall not constitute a breach of this Agreement or any other agreement

contemplated herein or of any duty or obligation of the Member, Board member, or officer at law or in equity or otherwise. § 16.3(b).

5.     Finally, as relevant to this action, section 17.1 of the Operation Agreement contained the following restrictive covenant:

> From the date hereof until the end of one (1) year from the date that WakeMed is no longer a Member of the Company [Blue Ridge GP] (the "Restricted Period"), neither WakeMed nor any Affiliate of WakeMed shall, directly or indirectly, without the prior consent of SCA-Blue Ridge, through one or more intermediaries, partners, or members, hold or acquire any direct or indirect ownership interest in, or manage, lease, develop, or otherwise have any financial interest (through a corporation, partnership, trust, or other entity in which WakeMed owns or has a beneficial interest) in any business or entity which develops, owns, manages, leases, or provides property to, a facility or business that performs outpatient surgery in a freestanding ambulatory surgery center (a "Competing Facility") within a two (2) mile radius of the Center (the "Restricted Area"); provided, however that neither WakeMed nor any Affiliate of WakeMed shall be prevented from owning less than 5% of the voting stock of a publicly-held company which owns or operates one or more healthcare facilities. This Section shall continue to apply during the Restricted Period to WakeMed if WakeMed ceases to be a Member.

6.     Plaintiffs allege that Wake Med held a "controlling interest" in Blue Ridge GP and that WakeMed "dominated the governing board of Blue Ridge GP by appointing a majority of its members."[8]

7.     Plaintiffs allege that "[w]hile WakeMed was still the controlling member of Blue Ridge GP, representatives of SCA-Blue Ridge presented WakeMed with an opportunity to negotiate the possible purchase of a nearby, competing ASF called Southern Eye Associates Ophthalmic Surgery Center"[9] ("Southern Eye"). Southern Eye was an ASF located at 2801 Blue Ridge Road in Raleigh and a competitor of Blue Ridge DSC.[10] Plaintiffs allege that "WakeMed indicated that it did have an interest in the acquisition of [Southern Eye], and that WakeMed

---

[8] Am. Compl. ¶¶ 11, 12.
[9] *Id*. at ¶ 19.
[10] *Id*. at ¶ 23.

would contact the owner and arrange a meeting."[11]  WakeMed, however, did not arrange a meeting between SCA-Blue Ridge and Southern Eye.  Instead, Plaintiffs allege that WakeMed usurped the opportunity and, in March 2012, entered into an "arrangement or agreement" to purchase the assets of Southern Eye for itself.[12]

8.      On March 8, 2012, WakeMed wrote to the DHHS notifying it that WakeMed intended to "to acquire from [Southern Eye] the existing, licensed [ASF] in operation . . . at 2801 Blue Ridge Road, . . . and all equipment associated with the [ASF]."  WakeMed closed the sale for the Southern Eye assets in or around May 2012.  The assets that WakeMed acquired included a CON to operate two surgical facilities.  Southern Eye is a "competing facility" as that term is defined in Section 17.1 of the Operating Agreement.

9.      In May, 2012, WakeMed applied to DHHS for permission to move the CON acquired from Southern Eye (the right to operate two surgical facilities) to its Raleigh campus instead of keeping the surgical facilities at the 2801 Blue Ridge Road address. WakeMed's Raleigh campus is approximately 10 miles from Blue Ridge DSC. On September 27, 2012, DHHS conditionally granted WakeMed's application.  Blue Ridge DSC filed an administrative challenge to the conditional approval, the procedural and factual history of which is laid out in *Surgical Care Affiliates, LLC v. N.C. Dept. of Health and Human Services*, __ N.C. App. __, 762 S.E.2d 468 (2014), *cert. denied*, __ N.C. __ (2015).  The administrative proceeding officially concluded on March 5, 2015, when the Supreme Court of North Carolina denied Plaintiffs' petition for discretionary review. DHHS awarded the CON to WakeMed on March 6, 2015.  On or about March 6, 2015, WakeMed began using the CON to treat patients at two surgical facilities on its Raleigh campus.

---

[11] *Id.* at ¶ 20.
[12] *Id.* at ¶ 29.

10.     On February 21, 2013, Plaintiffs initiated this lawsuit by filing their Verified Complaint.  On March 26, 2013, Plaintiffs filed a First Amended Complaint ("Amended Complaint").[13] Plaintiffs alleged the following claims for relief ("Claim(s)"): First Claim for Relief – Claim for Declaratory Judgment ("Claim One"); Second Claim for Relief – Alternative Motion for Preliminary Injunction and Claim for Permanent Injunction ("Claim Two"); Third Claim for Relief – Claim for Breach of Fiduciary Duty ("Claim Three"); Fourth Claim for Relief – Breach of Fiduciary Duty and Misappropriation of Business Opportunity ("Claim Four") and Fifth Claim for Relief – Claim for Violation of N.C. Gen. Stat. § 131E-190(h) ("Claim Five").

11.     On April 25, 2015, WakeMed filed a Motion to Dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(1).  On July 18, 2014, the Honorable John R. Jolly, Jr. granted Defendant's Motion to Dismiss in part, and denied it in part.  Judge Jolly dismissed that part of Plaintiffs' first claim (Claim 1(a)) seeking a declaration that "WakeMed does not have a sufficient interest in Southern Eye Associates OSC to permit it to apply to relocate the operating rooms."[14]  Judge Jolly also dismissed the fifth claim alleging that WakeMed violated the State statute governing the obtaining of a CON.  Judge Jolly denied Defendant's motion to dismiss claims 1(b), 2, 3, and 4.  Defendant appealed Judge Jolly's Opinion to the Court of Appeals and the Court of Appeals stayed all proceedings in the matter before this Court.[15] On April 2, 2015, the Court of Appeals dismissed Defendant's appeal, thereby lifting the stay of this proceeding. *SCA-Blue Ridge, LLC v. WakeMed*, No. 14-1291 (N.C. Ct. App. Apr. 2, 2015).

---

[13] Plaintiffs' Amended Complaint was subsequently verified by the April 6, 2015 Affidavit of Kelli Collins.
[14] Am. Comp. ¶ 45(a).
[15] *SCA-Blue Ridge, LLC v. WakeMed*, No. P14-673 (N.C. Ct. App. Sept. 15, 2014).

12. On April 7, 2015, Plaintiffs filed a motion for temporary restraining order seeking to prohibit WakeMed from acquiring or using the CON. On April 10, 2015, this Court issued an Order denying the TRO.

13. On April 17, 2015 Defendant filed its Motion for Judgment under Rule 12(c) seeking dismissal of Plaintiffs' remaining claims. At the parties' request, this matter was stayed by the Court from June 15, 2015 through October 1, 2015, while they pursued settlement discussions. On December 1, 2015, the Court held a hearing on the Motion for Judgment.

ANALYSIS

14. "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974) (citation omitted). "'A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]'" *Bigelow v. Town of Chapel Hill*, __, N.C. App. __, __, 745 S.E.2d 316, 319 (2013) (quoting *George Shinn Sports, Inc. v. Bahakel Sports*, Inc., 99 N.C. App. 481, 486 (1990)). The Court may only consider "the pleadings and exhibits which are attached and incorporated into the pleadings." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104 (2004) (internal quotation marks and citation omitted). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137. Thus, a Rule 12(c) motion for judgment on the pleadings should be denied "unless it is clear that plaintiff is not entitled to any relief under any statement of the facts." *Praxair, Inc. v. Airgas*, Inc., 1999 NCBC LEXIS 5, at *8 (N.C. Super. Ct. 1999).

15.     WakeMed seeks dismissal of Plaintiffs' remaining claims in this action for (1) a declaratory judgment "that the terms of the Operating Agreement prohibit WakeMed from obtaining a CON with respect to the assets of [Southern Eye]"; (2) a preliminary and permanent injunction "prohibiting WakeMed from acquiring or continuing to hold an interest in [Southern Eye], or from relocating operating rooms from [Southern Eye's] location, pending resolution of Plaintiffs' claims herein"; (3) WakeMed's breach of a fiduciary duty to SCA-Blue Ridge by acquiring the assets of Southern Eye by "applying for a CON to relocate and recharacterize the operating rooms," and by violating the noncompetition restrictions in section 17.1 of the Operating Agreement;[16] and (4) WakeMed's breach of a fiduciary duty to Blue Ridge DSC by usurping a corporate opportunity and acquiring the assets of Southern Eye. The Court will address each of the claims in turn.

*Plaintiff's First Claim for Relief – Declaratory Judgment*

16.     The remaining part of Plaintiffs' First Claim for Relief seeks a declaratory judgment "that the terms of the Operating Agreement prohibit WakeMed from obtaining a CON with respect to the assets of [Southern Eye]." Defendant argues that the "remaining declaratory judgment action is a thinly veiled attempt to circumvent the Administrative Procedure Act and to have this Court rule upon the same issues on which Plaintiffs lost [in the CON case]."[17] In other words, Defendant argues that the issue raised by the declaratory judgment claim has been decided in the administrative case, and is therefore barred by the doctrine of collateral estoppel. Plaintiffs contend that Defendant's argument was already raised, and rejected by Judge Jolly, in Defendant's prior motion to dismiss.[18]

---

[16] Am. Compl. ¶¶ 53-57.
[17] Def.'s Br. Supp. Mot. J. p. 19.
[18] Pls.' Br. Opp. Mot. J. pp. 21-22.

17. The Court agrees with Plaintiffs that Defendant's argument is essentially a repeat of its argument in its first motion to dismiss that Plaintiffs' declaratory judgment claim was abated by the administrative proceedings on the CON application. Here, however, the case is in a different procedural posture. Defendant contends that the administrative proceeding had now decided in its favor the issue of whether the Operating Agreement prohibited them from obtaining a CON, and that Plaintiff is collaterally estopped from raising the issue in this case. "Under the [ ] doctrine of collateral estoppel (or "issue preclusion"), "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Reese v. Brooklyn Vill., LLC*, 209 N.C. App. 636, 642 (N.C. Ct. App. 2011). The Court has reviewed the administrative and appellate decisions from the administrative proceeding, however, and concludes that the Office of Administrative Hearings did not expressly or impliedly rule upon the issue of Defendant's rights under the Operating Agreement.[19] Accordingly, Plaintiff is not collaterally estopped from raising the issue in this case.

18. Defendant further argues that the remaining declaratory judgment claim should be dismissed because the declaration "is meaningless, since [Plaintiffs] have sued WakeMed for a purported breach of the [Operating] Agreement; they do not need nor benefit from a separate declaration of breach."[20] Defendant asks the Court to exercise its discretion to not render a declaratory judgment here on the grounds that the declaration Plaintiffs seek "would not terminate the uncertainty or controversy giving rise to the proceeding." G.S. § 1-257. Defendant's argument, however, is flawed. Plaintiffs have not actually brought a claim styled as a breach of contract action. Rather, Plaintiffs have made a claim for breach of

---

[19] Answer, Ex. 5-C.
[20] Def.'s Br. Supp. Mot. J. pp. 19-20.

fiduciary duty based, *inter alia*, on WakeMed's alleged violation of the non-competition clause of the Operating Agreement.[21]  Defendant's argument incorrectly assumes that determination of the fiduciary duty claim will require the Court to address the issue of whether the non-competition restriction in the Operating Agreement prohibited WakeMed from obtaining the CON.[22]  This is not necessarily the case.  The breach of fiduciary duty claim will require Plaintiffs to first establish the existence of fiduciary relationship between WakeMed and SCA-Blue Ridge and/or Blue Ridge DSC.  If Plaintiffs fail make that showing, the Court will not be required to reach the question of whether the Operating Agreement prohibited WakeMed from obtaining the CON and whether WakeMed violated a fiduciary duty by acquiring the CON.  On the other hand, a declaration that the Operating Agreement prohibited WakeMed from obtaining the CON could help support a claim for breach of fiduciary duty, and certainly would not be inconsistent with such a claim.

19.     At this stage of the proceeding, the Court concludes that Plaintiffs have sufficiently alleged a viable claim for declaratory judgment to survive Defendant's motion. Accordingly, the Court concludes that Defendant's motion for judgment on the pleadings as to Plaintiffs' remaining declaratory judgment claim in their First Claim for Relief should be DENIED.

*Plaintiffs' Second Claim for Relief – Preliminary and Permanent Injunction*

*20.*     Plaintiffs' Second Claim for Relief seeks a preliminary and permanent injunction "prohibiting WakeMed from acquiring or continuing to hold an interest in [Southern Eye], or from relocating operating rooms from [Southern Eye's] location, pending

---

[21] Am. Compl. ¶¶ 53-56.
[22] The non-competition provision does not expressly mention CONs or prohibit WakeMed from obtaining a CON.  Defendant by its argument, however, equates the declaration Plaintiffs seek with a declaration that WakeMed violated the Operating Agreement by obtaining the CON.

resolution of Plaintiffs' claims herein."[23]  The Court has previously concluded that any injunctive relief aimed at preventing Defendant from "competing" in violation of section 17.1 of the Operating Agreement is moot because "Plaintiffs have effectively obtained three years of non-competition benefits" due to the delay occasioned by the administrative case.[24]  The Court now concludes that the claims for preliminary and permanent injunctive relief are mooted as a result of the Court of Appeals decision in *Surgical Care Affiliates, LLC v. N.C. Dept. of Health and Human Services*, __ N.C. App. __, 762 S.E.2d 468 (2014), *cert. denied*, __ N.C. __ (2015).  That decision established that Defendant held a sufficient interest in and properly applied for a CON to relocate the operating rooms to Defendant's Raleigh Campus, and granted approval to relocate the operating rooms. *See Total Renal Care of N.C. LLC v. N.C. HHS*, 195 N.C. App. 378, 386 (2009) (Petitioner's appeal of issuance of CON by DHHS was moot once "the project or facility for which the CON was issued is complete or becomes operational" since DHHS lacks authority to withdraw CON). There is no further injunctive relief that this Court could provide.  Accordingly, Defendant's motion for judgment on the pleadings as to Plaintiffs' Second Claim for Relief should be GRANTED.[25]

> *Plaintiffs' Third Claim for Relief – Breach of Fiduciary Duty owed to SCA-Blue Ridge and Fourth Claim for Relief – Breach of Fiduciary Duty owed by WakeMed to Blue Ridge GP*

21.     Plaintiffs allege that WakeMed owed a fiduciary duty to both SCA-Blue Ridge and to Blue Ridge DSC.[26]  The Third Claim alleges that WakeMed breached "its fiduciary duty to [Blue Ridge DSC]"[27] by acquiring the assets of Southern Eye, by violating the non-competition restrictions in section 17.1 of the Operating Agreement, and by applying to the

---

[23] *Id.* ¶¶ 47-52.
[24] Order on Mot. TRO (Apr. 10, 2015) ¶ 9.
[25] Since the Court has dismissed Plaintiffs' claim for a preliminary and permanent injunction as moot, it need not address Defendant's arguments for dismissal.
[26] Am. Compl. ¶ 14.
[27] *Id.* at ¶¶ 55, 60-61.

DHHS to relocate the operating rooms.[28]  Plaintiffs allege that WakeMed's breach of its fiduciary duty to Blue Ridge DSC "has caused injury and damages to [Blue Ridge DSC] in an amount exceeding $10,000.00."[29]

22.    In the Fourth Claim, Plaintiffs allege that "as the controlling member of the general partner of Blue Ridge DSC, WakeMed had a duty to avoid acquiring, for its own use and benefit, assets that would promote the business purposes and enhance to profitability of [Blue Ridge DSC]".[30]  Plaintiffs allege that WakeMed usurped a partnership opportunity of Blue Ridge DSC by acquiring the assets of Southern Eye instead of pursuing those assets for Blue Ridge DSC.

23.    Under the North Carolina Limited Liability Company Act, G.S. § 57C-1-01 et seq.,[31] members of an LLC are treated like corporate shareholders and managers are similar to directors.  *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473-74 (2009).  "Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company."  *Id.* at 473.  An exception, however, is that a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members.  *Id.*; *HCW Ret. & Fin. Servs., LLC v. HCW Emple. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *46 (N.C. Super. Ct. 2015); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *15 (N.C. Super. Ct. 2013) ("In some instances, a majority member owes the minority members a fiduciary duty that prevents the use of the majority vote to harm the minority.").

---

[28] *Id.* at ¶¶ 53-57.
[29] *Id.* at ¶ 55.
[30] *Id.* at ¶ 59.
[31] Chapter 57C of the General Statutes was repealed and replaced by Chapter 57D, effective on January 1, 2014. Because this case was commenced prior to Chapter 57D's effective date, the Court elects to apply that section to its analysis.  See G.S. § 57D-11-03(b) (2015) ("Any proceeding commenced before January 1, 2014, may be completed in accordance with the law then in effect.").

24.     Similarly, managers owe fiduciary duties to the company, but not to individual members. *Kaplan*, 196 N.C. App. at 473-74 (citing G.S. § 57C-3-22(b), which provides that a manager of a limited liability company "shall discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be *in the best interests of the limited liability company*."; emphasis added). Accordingly, "where it is alleged that [managers] have breached this duty, the action is properly maintained by the [LLC] rather than any individual creditor or stockholder." *Id.* at 474 (citations omitted).

25.     A minority shareholder or member still may not be able to pursue a claim where the injury alleged is to the corporation itself and a derivative claim on behalf of the corporation exists. *Maurer v. Maurer*, 2013 NCBC LEXIS 41, at *10-11 (N.C. Super. Ct. 2013) ("The court does not believe that the appellate courts have defined a black letter rule allowing a minority shareholder to pursue an individual action against a controlling shareholder when a derivative claim would be adequate to protect the asserted rights of both the corporation and the minority owner."). As a general rule, shareholders lack standing to bring individual causes of action to enforce actions accruing to the corporation. *Id.* (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659 (1997); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395-96 (2000)). *Barger* held:

> a shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself.

346 N.C. at 659.

26.     The breach of fiduciary duty claims in this action clearly appear to be claims of the companies. Both the Third and Fourth Claims allege that WakeMed's conduct caused

injury to Blue Ridge DSC.[32]  The injuries caused by WakeMed's acquisition of Southern Eye's assets were the lost opportunity to allegedly expand the business and grow the profitability of Blue Ridge GP and Blue Ridge DSC.[33]  Based on the allegations of the Amended Complaint, it is unclear whether the breach of fiduciary duty claims are raised derivatively on behalf of Blue Ridge DSC or Blue Ridge GP, or are raised as direct claims by one or more of the Plaintiffs.[34]  The Amended Complaint does not expressly allege that any of the Plaintiffs were owed a special duty by WakeMed or suffered a separate and distinct injury.

27.    Defendant argues that the breach of fiduciary duty claims should be dismissed on several grounds.  First, Defendant contends that WakeMed was not a partner in Blue Ridge DSC and, accordingly, could not have owed fiduciary duty to Blue Ridge DSC or its partners.  Defendant, however, does not cite to supporting law or make any argument regarding this contention.[35]    Second, Defendant contends that the Operating Agreement expressly relieved WakeMed of any duty it had to "offer" corporate opportunities to Blue Ridge GP. Plaintiffs, however, do not allege that WakeMed failed to offer them an opportunity; rather, Plaintiffs allege that SCA-Blue Ridge brought the opportunity to WakeMed and WakeMed usurped the opportunity for itself.  Third, Defendant argues that the Operating Agreement permitted WakeMed to engage in other businesses competitive with Blue Ridge GP, but Plaintiffs allege that WakeMed violated the express non-compete provisions of the Operating Agreement which prohibited competition within a two mile radius of its facilities.  Fourth, Defendant contends that the Operating Agreement relieved or

---

[32] Am. Compl. ¶¶ 55, 63.

[33] *Id.* at ¶¶ 62-63.

[34] The Amended Complaint does not allege, nor have the parties discussed in their briefs, whether Blue Ridge GP, LLC is still an active entity, and if so, the nature the current ownership of the LLC now that WakeMed is no longer a member.  Plaintiffs have not alleged that Blue Ridge GP authorized the filing of direct claims on its behalf against WakeMed.

[35] *See* Def.'s Br. Supp. Mot. J. 15.

protected WakeMed and the members it appointed to the Board from most fiduciary obligations, but at least some of these provisions require determinations of whether WakeMed acted in good faith or bad faith.

28.     Defendant also argues that it did not owe a fiduciary duty to Blue Ridge GP because it did not manage Blue Ridge GP or Blue Ridge DSC.  Rather, the LLC was managed by the Board, which was limited in its ability to take significant actions by the supermajority vote requirements of the Operating Agreement.  Defendant contends that Plaintiffs' bald allegations that WakeMed "controlled" Blue Ridge GP and "dominated" the Board by appointing three of the five members are insufficient to allege a fiduciary relationship.[36]  This argument, however, ignores the fact that Plaintiffs' claims are aimed primarily at actions WakeMed took not through its control of the Board, but instead at actions WakeMed took as a member of Blue Ridge GP.[37]

29.     The Court has considered Defendant's arguments regarding the fiduciary duty claims and concludes that at this stage of the proceeding, Plaintiffs' allegations are sufficient to support their Third Claim.  Plaintiffs have alleged that WakeMed was the majority interest holder in Blue Ridge GP and that WakeMed controlled and dominated the corporation.  This could provide the basis for SCA-Blue Ridge, as minority or "non-controlling" member, to pursue a breach of fiduciary duty claim.  Plaintiffs allege that WakeMed breached a fiduciary duty by, among other things, violating the non-compete obligations in the Operating Agreement, and by usurping the corporate opportunity that SCA-Blue Ridge brought to WakeMed for the benefit of Blue Ridge GP.  These allegations, if true, could support a claim for breach of fiduciary duty.  While Defendant argues that certain provisions of the Operating

---

[36] *Id.* at 17-18.
[37] The Court recognizes that Plaintiffs have alleged that WakeMed dominated the Board as part of its allegations that WakeMed was a controlling majority member of Blue Ridge GP, but it has not alleged that WakeMed took any action related to the acquisition of Southern Eye through Board action.

Agreement alter the fiduciary duties it might ordinarily owe SCA-Blue Ridge, those provisions will have to be interpreted in conjunction with its non-compete obligations and the rest of the Operating Agreement to determine their impact on these claims. Those interpretations are best left to make with a more developed record. Accordingly, Defendant's motion for judgment on the pleadings as to Plaintiffs' Third Claim for Relief should be DENIED.

30. Plaintiffs' Fourth Claim for Relief presents a more difficult question. The Fourth Claim appears to be directed solely at breaches of fiduciary duties WakeMed allegedly owed to Blue Ridge DSC "as the controlling member of the general partner of Blue Ridge DSC."[38] It is not clear on what basis such a fiduciary duty could be owed since WakeMed was not itself a partner in Blue Ridge DSC, and WakeMed acted independently of the Board in acquiring Southern Eye's assets. In other words, WakeMed's alleged "dominance" of the Board does not appear to be connected with the alleged breach of duty here. On the other hand, WakeMed was the majority interest owner and the general partner of Blue Ridge DSC, and the Operating Agreement contains some provisions designed to protect the interests of the limited partners of Blue Ridge DSC in certain situations.[39] Neither party, however, has fully briefed or argued these questions, nor is the Court not prepared, solely on the allegations in the Amended Complaint, to conclude that Plaintiffs can prove no set of facts that could sustain their Fourth Claim. Reading the Amended Complaint liberally and construing all inferences in Plaintiffs' favor at this stage of the proceeding, the Court concludes that Plaintiffs have at least arguably stated a claim for breach of fiduciary duty owed by WakeMed to Blue Ridge DSC. Accordingly, Defendant's motion for judgment on the pleadings as to Plaintiffs' Second Claim for Relief should be DENIED the Fourth Claim.

---

[38] Am. Compl. ¶ 59.
[39] *See, e.g.,* Op. Ag. §§ 10.9, 17.7-.9, 18.1, and 18.2.

THEREFORE, IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings is GRANTED, in part, and DENIED, in part, as follows:

31.     As to Plaintiffs' Second Claim for Relief, Defendant's Motion for Judgment on the Pleadings is GRANTED.

32.     As to Plaintiffs' First, Third, and Fourth Claims for Relief, Defendant's Motion for Judgment on the Pleadings is DENIED.

This the 4th day of January, 2016.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
 for Complex Business Cases